## EAGLE CREEK OIL CO. v. GREGSTON.

No. 13336—Opinion Filed May 13, 1924.

1. **Master and Servant—Personal Injury—Primary Negligence—Proof — Instructions.**

In a law action by a servant against a master for personal injury suffered in the course of employment, the burden rests upon the plaintiff to allege and prove primary negligence. The provisions of Comp. Stat. 1921, sec. 7285, apply only to proceedings by an injured employe for compensation under the Workmen's Compensation · Law, and do not relieve him from the necessity of proving actionable negligence when he elects to sue for damages under the provisions of Comp. Stat. 1921, sec. 7286. Instructions which permit recovery in such action merely upon proof of employment and injury are prejudicially erroneous.

2. **Same—Defensive Evidence — Erroneous Exclusion.**

In such action a tender of proof by defendant for the purpose of showing that the place and appliances furnished by the master to the servant for the performance of his duties were recognized generally in that line of work as standard and as being properly safeguarded, is germane upon the issue of primary negligence, and its exclusion by the court upon the theory that negligence and want of care were not issues in the case is prejudicially erroneous.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Stephens County; Cham Jones, Judge.

Action by F. U. Gregston against Eagle Creek Oil Company, a corporation, for damages for personal injury. Judgment for plaintiff, and defendant brings error. Reversed.

This action was commenced in the district court of Stephens county June 30, 1921, by F. U. Gregston against the Eagle Creek Oil Company to recover damages for personal injury by reason of the negligence and carelessness of the defendant in furnishing the plaintiff unsafe appliances with which to perform his duties as a servant of the defendant.

Defendant answered by general denial and specially denied that plaintiff was its serv-

ant or in its employment at the time of the injury, and specially pleaded contributory negligence and assumption of risk.

There was a reply to this answer and the case was tried to a jury, resulting in a verdict and judgment in favor of the plaintiff for the sum of $7,351, to reverse which this proceeding in error was commenced.

The material facts as shown by the record are copied from the brief of defendant in error · as follows: That plaintiff was 31 years of age; that he had worked for the defendant until the 26th day of April before the injury occurred on the 19th day of May of the same year; that he quit work for the defendant for the purpose of putting in a filling station, but didn't do it. That Reese, the driller for the defendant, sent him word to come to work and he went back to work for the defendant; that when plaintiff arrived at the drill rig he spoke to the members of the crew, and when the crew went to work the plaintiff asked the driller, Reese, if he wanted him to take South's place and he said run the cat-head; that the driller had authority to hire and discharge his own men; that he, the plaintiff, at the request of Reese, began work on the cat-head; that a cat-head is an iron spool which sits in the center of the oil well derrick and is operated from the engine, and that chains run direct to where the cam shafts work the cat-head; that at the time the injury occurred plaintiff and another employe of defendant were operating the cat-head and had put what is known as the Kelly joint on the floor of the derrick. In reference to the immediate circumstances of the injury Gregston testified:

"A Kelly joint is a joint that goes on top or sits on top of all the tools. It is square and sits down so it can run in the cable. We had this joint off and had put another joint on to go on down. We had these Kelly joints sitting here on the floor. We put this rope through here and tried to hold it and put it through here and back to the draw works. This part here is on line with the cat-head and this throws the cat-head and Kelly directly in line, but it would be out of line in this case, because you would have to put the rope through backwards instead of putting it in like this for the purpose of the cat-head and in pulling, that is, backwards, it is more ·dangerous about getting it in the cat-head correct. We were pulling this cat-head. Had the rope in the cat-head correct. We were pulling it up with this big hook and had put it out on the floor and this part of

the rope was all frazzled and crossed; I don't know how it done it; anyway it was that way, and it crossed and jerked my arm in there before I could help it; the rope, when it first came around caught those fingers there first and the next time the rope came around it caught my hand there (indicating) and the next time it caught it like that and it lacked that much being off and it slipped out. It broke all those leaders there and then the rope came over here and, well, all I could tell the next it came over it picked me off the floor. It injured it so it won't straighten. It picked me up and throwed me out from the cat-head and lit three or four feet on the floor. I then walked around the derrick to the place where Mr. Reese was and he hadn't seen my hand, and I showed him and he said to some of the men 'take him to a doctor quick, take him to a doctor as quick as you can get him there,' and we walked around and got in a car and he walked up there and said again to get him to the doctor as quick as you can."

Sandlin & Winans, for plaintiff in error.

Womack, Brown & Cund, for defendant in error.

Opinion by LOGSDON, C. Error is assigned upon the action of the trial court in overruling defendant's motion for a new trial. Several specifications of error arise under this assignment, but in the view taken of the case here it will only be necessary to discuss those numbered 5 and 7, which read as follows:

"5. Said court ·erred in refusing and ruling out competent and· legal evidence on the part of the plaintiff in error.

"7. Said court erred in giving the following instructions to the jury, to wit: Instructions 4, 5, and 6."

Plaintiff alleged and proved a failure on the part of defendant to provide compensation for injured employes under either of the four plans provided for by Comp. Stat. 1921, sec. 7308, and on this based his election to proceed by common law action for damages as authorized by Comp. Stat. 1921, sec. 7286. Under this latter section the advantage accruing to the injured employe and the disadvantage militating against the employer is the elimination of defenses under either of the three doctrines of fellow servant, contributory negligence, or assumption of risk. Merrick & Coe v. Modlin et al., 88 Okla. 83, 211 Pac. 510; Whiteneck v. Board of ·Com'rs of Woods Co., 89 Okla. 52, 213 Pac. 865. The character and quantum of proof necessary to establish defendant's liability for negligence and plaintiff's right to recover are in no way changed. Plaintiff must es-

tablish the three essential elements of actionable negligence, viz.: (a) A duty owing by defendant to plaintiff, (b) a failure of defendant to perform that duty, and, (c) injury resulting to plaintiff proximately from such failure. It is only in proceedings for compensation under the Workmen's Compensation Law that the injured employe is relieved from the necessity of establishing actionable negligence. This distinction is succintly stated in Lewis, etc., County v. Ind. Acc. Board (Mont.) 155 Pac. 268, thus:

"The fundamental difference between the conception of liability and compensation is found in the presence in the one, and the absence from the other, of the element of actionable wrong."

Justice Kane made the same distinction clear in Stasmos v. State Industrial Commission et al., 80 Okla. 221, 195 Pac. 762, thus:

"The test of liability under the Workmen's Compensation Law for injuries arising out of and in the course of employment is not the master's dereliction, whether his own or that of his representatives acting within the scope of their authority, but is the relation of the service to the injury, of the employment to the risk."

The vice of instructions 4 and 5 will be apparent from a mere reading of them in view of the legal principles above stated. The court's charge to the jury consisted of instructions 1 to 7, inclusive. Instruction 1 stated the substance of the pleadings. Number 2 fixed the burden of proof and defined preponderance of evidence. Number 3 made the jurors sole judges of the credibility of the witnesses and of the weight of the evidence. Instruction 6 defined the measure of damages if plaintiff should recover, while instruction 7 authorized a verdict by not less than nine jurors. Instructions 4 and 5 read:

"4. In this case, gentlemen, you are instructed that the plaintiff would not be entitled to recover in this case, unless you believe from the evidence that he was an employe of the defendant at the time of the alleged injury and in this connection you are instructed that an employe means any person engaged in any mechanical or manual work in the employment of another person, firm, or corporation and, unless you believe from the evidence in this case that the plaintiff, at the time of the alleged injury, was employed by and under the direction of and control of the defendant, your verdict should be for the defendant. And in this connection you are further instructed that if the plaintiff was employed by and working under the directions of the agents, or employes of the defendants,

as a necessary and proper laborer on the work that that would constitute him an employe.

"5. You are further instructed, gentlemen, that should you find by a preponderance of the evidence on the part of the plaintiff that he was an employe of the defendant at the time he received the injuries complained of, that the only further question for your consideration would be the extent of his injuries and the amount of damages which he is entitled to recover. On the other hand, gentlemen of the jury, you are instructed, should you find from all the facts and circumstances in evidence that plaintiff was not in the employ of the defendant, you should find for the defendant."

By instruction 4 the jury is authorized to find in favor of the plaintiff upon being satisfied from a preponderance of the evidence that plaintiff was an employe of defendant, as employe is therein defined, without any proof of primary negligence on the part of defendant. Instruction 5 makes the vice of instruction 4 more apparent and prejudicial by telling the jury that if it should find the plaintiff to have been an employe of defendant at the time he was injured, then the only thing left for consideration would be the extent of the injury and the amount of damage.

These instructions amounted to a directed verdict in favor of plaintiff, leaving only the amount of recovery to be determined by the jury. The words "negligence" or "care" are not used anywhere in any of the seven instructions to the jury. Defendant's duty was nowhere defined. Plaintiff's right to recover was nowhere made to depend on a breach of that duty by defendant. It is evident that the trial court took the view that plaintiff's right to recover was controlled by Comp. Stat. 1921, sec. 7285, but that section only controls in proceedings for compensation. In law actions for damages Comp. Stat. 1921, sec. 7286, applies, and precludes the usual defenses in actions for negligent injury. Merrick & Coe v. Modlin et al., supra; Whiteneck v. Board of Com'rs of Woods Co., supra. This is one of the penalties imposed upon employers for failure to provide compensation, but in law actions for damages plaintiff must allege and prove actionable negligence. Dewey Portland Cement Co. v. Blunt, 38 Okla. 182, 132 Pac. 659; Texas Co. v. Collins, 42 Okla. 374, 141 Pac. 783; Interstate Compress Co. v. Arthur, 53 Okla. 212, 155 Pac. 861; Sulzberger & Sons Co. v. Strickland, 60 Okla. 158, 159 Pac. 833; Ponca City Ice Co. v. Robertson, 67 Okla. 86, 169 Pac. 1111; Pine Belt Lumber Co. v. Riggs,

80 Okla. 28, 193 Pac. 990. The instructions complained of were prejudicially erroneous.

Under specification 5 complaint is made of certain rulings of the court in the exclusion of testimony offered on behalf of defendant. An examination of the record discloses that when the witness Differdean, and when the witness Heck were on the stand defendant offered to prove by them that the cat-head and Kelly joint and the other equipment of the defendant in and about its rotary rig was standard equipment such as was recognized and used generally in the oil fields, and that it was as fully safeguarded as was possible for such appliances in and about this character of rig to be safeguarded. To this offer of proof by the witness Differdean the objection interposed was:

"Mr. Brown: We object to that. It wouldn't make a particle of difference."

The objection to a similar offer of proof while the witness Heck was upon the stand was as follows:

"Mr. Brown: We object to that because it is irrelevant, incompetent and immaterial. It is admitted that he did not carry any liability insurance, and therefore is immaterial."

These objections were by the court sustained. The offer to prove was competent and material and was germane upon the question of primary negligence on the part of the defendant alleged by the plaintiff in his petition, and which it was incumbent upon him to establish by a fair preponderance of the evidence. The question of whether the defendant was negligent in furnishing an unsafe place or unsafe appliances for the use of its servants, by reason whereof plaintiff suffered injury was the principal question in the case, and was a question for the determination of the jury under all the proof. Certainly any testimony in behalf of the defendant which tended to disprove negligence on its part was germane and material upon this issue, and its exclusion by the court was prejudicial to the substantial rights of the defendant. The weight of such evidence was solely for the jury, but its competency was a question to be determined by the court, and since such testimony was competent, relevant, and germane, the rulings of the court in excluding it were erroneous.

Another question which may be adverted to briefly is defendant's contention that the court erred in refusing to give its requested instructions numbered 1, 2, 3, and 4. Requested instruction number 1 was for a directed verdict. There was no error

in its refusal. Requested instructions 2, 3, and 4 presented in various forms the question of whether plaintiff at the time of the injury was an employe of the defendant. The testimony shows that a man named South was an employe of defendant, and that Reese was the head driller on this particular well. South desired to lay off on this occasion and asked the driller, Reese, if it would be alright for the plaintiff Gregston to substitute for him. When Gregston came to the rig he talked with Reese and informed him that he was going to substitute for South and was directed by Reese to take charge of the cat-head. There is conflict in the testimony as to the authority of Reese to employ and discharge help, but on the entire record there was sufficient testimony to take this question to the jury so that no error was committed by the court in the refusal of these requested instructions.

Because of the errors of the court heretofore pointed out in its instructions numbered 4 and 5, and in its rulings on the evidence offered by the defendant, which are deemed to be prejudicial to the substantial rights of the defendant, this cause should be reversed and remanded, with directions to the trial court to grant the defendant a new trial herein.

By the Court: It is so ordered.