## TINDALL MOTOR CO., Inc., v. MANKIN.

No. 28193.  Nov. 15, 1938.

Leon C. Phillips and J. Walter Long, Jr., for plaintiff in error.

Paul F. Showalter and David A. Kline, for defendant in error.

RILEY, J. This is an appeal from a judgment in favor of defendant in error,

herein referred to as plaintiff, in an action to recover damages for personal injuries.

Defendant is a common carrier for hire engaged in motor trucking business. Plaintiff was an employee of defendant assisting in loading and unloading freight at the defendant's freight house.

On August 15, 1936, while assisting in unloading a heavy box from a truck, while walking backward carrying the forward end of the box from the truck, plaintiff stepped into a hole on the dock or platform and fell. The box fell on him injuring his right leg at the knee joint.

Plaintiff alleged that his injuries arose as a result of defendant's negligence in permitting the hole to remain in the floor of the dock or platform, violating defendant's duty to provide plaintiff with a safe place in which to work, and negligence in not warning plaintiff of the danger.

Defendant answered admitting that plaintiff was its employee, and admitting its corporate existence, and in substance denying generally all the other material allegations. It further alleged that plaintiff's injury, if any, was sustained on a special dock not under the control of or owned by defendant. That the surface of said dock was in plain view, and that plaintiff had actual, visible notice of the condition of same, and that if any hole existed in said dock, plaintiff had actual knowledge thereof, and by walking into said hole, the injury, if any, thereby sustained was caused by his own contributory negligence.

The cause was tried to a jury, resulting in a verdict and judgment for plaintiff in the sum of $2,500.

The petition in error contains twelve assignments of error, several of which go to alleged insufficiency of the evidence.

These assignments are presented in the brief under one proposition, to the effect: "That the evidence in this case is insufficient to meet the burden of proof on plaintiff's part, or support the verdict and judgment."

In this connection it is contended that there is no proof of primary negligence or actionable negligence on the part of defendant.

It is settled law that in an action by a servant against a master to recover damages for personal injury suffered in the course of employment, the burden rests upon the plaintiff to allege and prove primary negligence upon the part of defendant. Eagle Creek Oil Co. v. Gregston, 99 Okla. 181, 226 P. 339.

There is no contention that there was no allegation of primary negligence. The question then is: Was there any evidence reasonably tending to prove such negligence? It is conceded that it is the duty of an employer to furnish his employees a reasonably safe place in which to work. Failure so to do is negligence.

There is evidence reasonably tending to show that the dock or platform upon which plaintiff was working had been used by defendant in unloading freight for several months prior to the injury. The evidence shows the floor of the dock was constructed of lumber 2″ by 8″ or 2″ x 10″; that a hole some 6″ x 8″ had been broken through one of the boards several days before the injury; that it had been covered up by a flat piece of steel, but this piece of steel had been removed a day or two before the injury and taken to another dock used or owned by defendant.

T. P. Turner was called as a witness for plaintiff and testified that at the time of the injury he was employed by defendant and his duties were truck driver and dock foreman. He then testified:

"Q. Now, on the 15th day of August, 1936, you say you were working there in your capacity as dock foreman? A. Yes, sir. Q. State as near as you can what happened that day with reference to the injury of this plaintiff. A. Mr. Mankin and I were unloading a truck on the north dock of our place, 1418 West Main. We had a load of caskets and other things, and as we carried one of the caskets out of the truck, Mr. Mankin was backing up and stepped through a hole in the dock and the casket hit him on the leg."

And further:

"Q. Now, how long did you know there was a hole in the dock? A. Approximately two or three weeks. Q. Two or three weeks? A. The hole hadn't been there that long. There had been a broken board for sometime. Q. As foreman, what did you do about that board, if anything? A. I reported it to Mr. Corey, the agent. Q. When did you report it to Mr. Corey, the agent? A. The week or ten days before this accident. Q. And that hole had been there that long? A. Yes, sir. Q. To your personal knowledge? A. Yes, sir. Q. Had you ever called attention of that hole to Mr. Mankin, the plaintiff here? A. No, sir. Q. And so far as you know, you never told him it was there? A. No, sir. Q. Now, with reference to this hole, was it

south of the north corner of the truck that was backed up there? A. No, sir, it was approximately in the middle of the tail piece a little to the south. Q. About how big a hole would you say that was? A. About six by eight. Q. Inches? A. Inches. Q. And how long would say the board was completely broken out? A. Probably about ten days. Q. Probably about ten days. Do you know of your own knowledge whether or not Mr. Mankin had ever been right over that place? A. I couldn't say as he had been over the hole. Q. What was the usual procedure on that dock when holes were broken in like that? A. We either covered them or had someone to repair it. Q. Do you know whether or not this hole had been previously covered with something? A. It had been covered with a flat steel that we had been using for the tail gates of the trucks, and it had been moved back to the other dock. Q. You don't know when that was done? A. No, sir. Q. Then a man might have been on that dock numerous times while the hole was there, and after you had reported the hole to have been there to the company, and not have seen the hole because it was covered up with this steel? A. Possibly."

Plaintiff testified in substance that he was employed as extra help at the freight house: that he had been working on the other dock for sometime and had not worked on the dock in question for some 48 hours before the day he was injured; on that day he was directed to go to the dock in question and assist in unloading the freight, including the box containing the coffin; that he did not know of the existence of the hole in the dock and did not see it, and no one told him of its existence or warned him that it was there; that when the dock foreman, Mr. Turner, was up in the truck and he and plaintiff were carrying the box out of the truck, he was at the outer end of the box and Turner was in the truck at the other end; that in order for plaintiff to carry his end of the box he was walking backward, as was the custom in such cases; that while so doing he stepped into the hole with his left foot and fell, and the box fell on his right leg, whereby he was injured.

It is asserted that the defendant did not know and could not by reasonable diligence or ordinary care have known of the existence of the hole in the dock, or that it was not properly repaired at the time of the injury.

As pointed out above, the witness Turner testified that he had reported the existence of the hole to Mr. Corey a week or ten days before the accident. Mr. Corey was the agent in charge of repair work. While he denied the statement of the witness Turner, this presented only a conflict in the evidence on a question of fact, which was for the jury to decide.

It is asserted that it is evident that the hole had been recently uncovered and no reasonable opportunity allowed the defendant to discover that fact. The evidence is that it had been uncovered for about two days before the injury.

The court instructed the jury that before plaintiff could recover it was necessary for him to prove by competent evidence and by a preponderance thereof that defendant had actual or constructive notice of the existence of the hole, and that constructive notice meant the existence of the hole in the floor for such length of time as the defendant should in the exercise of ordinary care know about it.

We cannot say as a matter of law that the existence of the hole uncovered on the platform or dock at the freight house for two days could not and would not have been discovered by the defendant in 'the exercise of ordinary care.

There is no evidence as to who removed the flat piece of steel from over the hole, but there is evidence by a witness for the defendant, Mr. Hubbard, that it had been transferred "The day before, or the day before that. We used the steel on the other dock."

Whether this was done under the direction of the man in charge of the freight house does not appear. Certainly there is no evidence that it was removed by a fellow servant of plaintiff. Therefore, the case of Peet v. Remington, etc., Co., 83 N. Y. S. 524, cited by defendant, does not apply.

Under the record we cannot say as a matter of law that there was no evidence reasonably tending to prove primary negligence on the part of defendant.

It is asserted that, "even though plaintiff Mankin did not know of the existence of the hole, he is charged with the knowledge thereof because he could have, by the exercise of ordinary care, discovered it, and his failure to do so was contributory negligence on his part."

It is too well settled for discussion that the question of contributory negligence in this state is, under our constitutional provision, in all cases a question of fact for the jury.

The defendant pleaded contributory negligence as a defense, and the question was fairly submitted to the jury under proper instructions, and the verdict of the jury is conclusive.

Defendant also asserts that the court failed to give any instruction to the effect that plaintiff, as an employee, assumed the risk of dangers common or naturally incident to the employment.

Assumption of risk was not pleaded as a defense in this case. The court was not called upon to instruct as to that defense.

It is finally asserted that the judgment is excessive and contrary to the court's instructions.

It is not pointed out wherein the verdict is contrary to the instruction given by the court on the measure of damages.

Defendant, however, asserts that the verdict and judgment violate the provision of section 10001, O. S. 1931, that "damages must, in all cases be reasonable," etc.

In this connection defendant asserts that in this case the evidence shows plaintiff's earning capacity to be 30 cents per hour; that there was no total disability or total loss of earning capacity; that the only statement fixing the "percentage of disability" was by defendant's doctor, who found it at 10 to 15 per cent. permanent partial disability to the left leg, and that a complete loss of plaintiff's leg would allow him no more than the jury gave him in this case when the amount of wages he was earning is taken into consideration.

Damages in a case of this kind are not measured under the rules applicable in workmen's compensation cases. Other elements are to be taken into consideration, such as past physical pain and suffering, probable future pain and suffering, whether the injury is permanent or temporary, etc.

In this case there is evidence of pain and suffering, and evidence tending to show that the injury is permanent, and that plaintiff will probably suffer future pain as a result of his injuries.

In such circumstances we cannot say that a verdict and judgment for $2,500 is excessive as being unreasonable.

The judgment is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and PHELPS and HURST, JJ., concur.