**CHICAGO, R. I. & P. R. CO. v. McCLEARY.**

No. 25144.   Oct. 8, 1935.

Rehearing Denied Dec. 24, 1935.

348

W. R. Bleakmore, W. L. Farmer, John Barry, and Robert E. Lee, for plaintiff in error.

Billups & Billups, for defendant in error.

PER CURIAM. About 6:30 p. m. on September 30, 1931, plaintiff, Ashley McCleary, was walking through the switch yards of the defendant, the Chicago, Rock Island & Pacific Railway Company, at Oklahoma City. These yards are located several blocks east of the main business district of the city. The distance across the yards north and south is about 300 feet and east and west about one-half mile. There were no streets, alleys or other thoroughfares running either north and south across, or east and west through, these yards. Plaintiff for several years had been working for the defendant railroad company in and about the freight yards. On the day in question plaintiff left or quit his work about 5 o'clock p. m., and went down to the business district of Oklahoma City on private or personal business. He lived in the northeast part of the city, beyond the railroad yards, and was going home from his mission in the business district at the time he was injured. On his way home plaintiff, as had theretofore been his custom, walked through the switchyards in an easterly direction and along the north side of one of the tracks therein, which was called the "barber track." The track along which plaintiff was walking had, according to the undisputed testimony, been used by a large number of persons for a long period of time as a pathway to walk from the northeast or east part of the city to the business district of Oklahoma City. At the time when plaintiff was using said tracks as a pathway, there was a switch engine pulling 12 cars of merchandise over the barber track from west to east, in the same direction plaintiff was going. The switch engine was headed west, although traveling east, and

there was a brakeman, or employee, upon the back of the engine—or front of the train—as a lookout. The most northerly track in the yards at the place where the plaintiff was walking at the time of the injury was called the "stock track". Plaintiff testified there were a number of cars located upon the stock track, standing still, as he was walking east between the south side of said cars and the north side of the barber track, when his attention was first directed to the switch engine and 12 merchandise cars by a great deal of popping and racket on the south side of plaintiff. Plaintiff looked up and saw the switch engine right on him. The engine passed him, also two or three box cars, traveling at a rate of speed of about 30 miles per hour, according to the testimony of plaintiff's witnesses. This was in excess of the speed limit prescribed by applicable ordinance of the city of Oklahoma City. The clearance between the cars on the barber track and the cars on the stock track was about 3 feet 4 inches. As the moving train passed, dirt and gravel flew up into the face of plaintiff. He continued walking east between the moving train to the south and the stationary string of cars on the north, and after the engine and two or three box cars had passed him, he heard some one whistle. As he looked around, a car which he says was wider than the ones which had passed him struck him on the shoulder, knocking him down, and, in falling, the plaintiff said he guessed "my hand went over the rail and it mashed my hand up into rags."

Prior to the time the engine and box cars on the barber track were first noticed by plaintiff, there had been no signal by whistle or bell or other means to notify him of the approach of the train. None of the train crew saw plaintiff, according to the testimony of those members of the crew who testified.

Counsel for plaintiff asked him the following question:

"Q. You may tell the jury whether or not you had any way of getting out or avoiding being hit when this train came down. A. I had no way at all of getting out. The only way I could have got out if he had whistled or rang the bell I would have either jumped in between the cars or else went across the track on the south side."

As a result of the accident plaintiff's hand was amputated, and upon trial the jury rendered a verdict of $2,000 in favor of plaintiff.

The petition of plaintiff charges two acts

of negligence upon the part of defendant, as follows:

"First. The defendant, through its employees, saw, or by the exercise of reasonable diligence could have seen, the plaintiff in the dangerous and perilous position in which he was, in time to have stopped or slowed down the train and prevented the injury to plaintiff, but, instead, the defendant failed and refused to exercise reasonable and ordinary care to prevent injury to the plaintiff.

"Second. The defendant operated its train at an excessive and reckless rate of speed and at a rate of speed which was in violation of the ordinances of the city of Oklahoma City."

In giving the statement of facts as above, the evidence most favorable to the plaintiff and to the verdict of the jury has been used, except as to the clearance between the cars on the barber track and the cars on the stock track, concerning which there is definite and indisputable testimony upon the part of the defendant, which, we feel, the jury would be required to believe.

The defendant, upon appeal, contends:

"First. Defendant violated no duty it owed to the plaintiff and therefore could not have been guilty of negligence.

"Second. Since plaintiff was merely a licensee, the only duty of defendant was not wantonly and willfully to injure plaintiff after his perilous position was discovered."

The rules for which defendant contends are not applicable here. The question of the duty of a railroad company to a licensee came up squarely for decision in this court for the first time in the case of Wilhelm v. Missouri. O. & G. Ry. Co., 52 Okla. 317, 152 P. 1088. That case was followed in Midland Valley R. Co. v. Kellogg, 106 Okla. 237, 233 P. 716, and in the more recent case of Gulf, C. & S. F. Ry. Co. v. Nail, 156 Okla. 294, 10 P. (2d) 668.

In the case last cited, the opinion by Mr. Justice Swindall states:

"This, then, brings us to a determination of the legal duty owed by the employees of the railroad company in operating its trains to a licensee upon the railroad right of way at a point where the public has for years openly and notoriously used the tracks for a passageway. The duty was stated in the second syllabus paragraph of the case of Wilhelm v. Missouri, O. & G. Ry. Co., 52 Okla. 317, 152 P. 1088. decided in 1915, as follows:

" 'The rule as stated in A., T. & S. F. Ry. Co. v. Cogswell, 23 Okla. 181, 99 P. 923, 20 L. R. A. (N. S.) 837, to the effect that a railroad company is liable only for willful and wanton injuries which may be inflicted upon a licensee, is not followed. But it is held that, regardless of the fact that the person injured was a bare licensee upon the track of the railroad company, the company is bound to exercise that degree of care and watchfulness to protect human life that is commensurate with the probability that persons may be upon its track at any given point. And whether that has been done or not, under proper instructions, is a question for the jury.'

"In the body of the opinion the court quoted with approval from Swift v. Staten Island R. T. R. Co., 123 N. Y. 645, 25 N. E. 378, as follows:

" ' "The legal principles applicable to the facts appearing here have been frequently enunciated by this court to the effect that, where the public have, for a long time, notoriously and constantly been in the habit of crossing a railroad at a point not in a traveled public highway, with the acquiescence of the railroad company, such acquiescence amounts to a license. and imposes a duty upon the company as to all persons so crossing, to exercise reasonable care in the running of its trains so as to protect them from injury." '

"In the Wilhelm decision it was pointed out that the court in stating the duty in the Cogswell Case, cited therein, was indulging in dicta. because in that case the plaintiff was held to be an invitee. The rule announced in the Wilhelm Case has not since been departed from in so far as it concerns the duty owed by a railroad company to licensees upon its right of way at a point where a license is implied to the whole public because of long and open use. As applied to such case we believe it to be a wholesome rule, and, therefore, follow it in this case."

It is not surprising there is some confusion as to the duty incumbent upon a railroad company in a case of this sort for in the cases of Midland Valley R. Co. v. Kellogg, supra, and Pool v. St. Louis-S. F. Ry. Co., 158 Okla. 261, 13 P. (2d) 195, the court seems to have made a distinction between the duty of a railroad company to a "bare or mere licensee" and a "licensee" or "invitee." "Bare or mere licensee" is one whose presence on the premises is merely tolerated; while a "licensee" or "invitee" is one who is on the premises by invitation, express or implied, as where the premises have been commonly used for a certain purpose by a large number of people for a long period of time. In the case of a "bare or mere licensee" the only duty on the part of the owner of the premises involved is not wantonly or willfully to injure such person when his perilous

position is discovered; while in the case of a person who is making use of the premises of a defendant for a purpose, or in a way in which they have been used by a large number of people for a long period of time, the owner of the premises involved must use that degree of care and watchfulness to protect against injury that is commensurate with the probability of persons making the accustomed use of such premises.

The difference in the duty upon the part of the owner of the premises involved in these two different circumstances is well illustrated by the following quotation from the case of Midland Valley R. Co. v. Kellogg, supra:

"Counsel for defendant complains of the rule announced in the case of Wilhelm v. M., O. & G. R. Co., supra, which has been followed by this court in a number of decision —said rule being that the railroad company is bound to exercise that degree of care and watchfulness to protect against injuring a licensee that is commensurate with the probability that persons may be upon its track at the point in question. It is contended that there is a lack of harmony in the line of decisions, adhering to the rule announced in the Wilhelm Case, and the rule announced in the Cogswell Case, supra. The conflict between these lines of authority is not as real as it seems. In the Cogswell Case, and other decisions following the same, the party in question was a bare or mere licensee, whose presence on the premises was merely tolerated, and people in large numbers were not accustomed to use the track as a footpath or roadway at all times of the day, openly and notoriously, which would cause the company to anticipate the presence of persons on the track at the point in question, by reason of an implied invitation, as in the case at bar. The railroad company owes a bare licensee the same duty as a trespasser, and that is not willfully or wantonly to injure him after his perilous position is discovered, but this rule does not obtain in the case of a licensee, being one who is on the premises by invitation, express or implied. This marks the distinction between these two lines of decisions.

"In this case the jury was warranted in finding that the child in question was on the track by implied invitation, and, therefore, a licensee; and the foregoing rule, as announced in the Wilhelm Case, supra, is applicable, and the company was required to maintain a lookout and to exercise ordinary care to prevent injuring persons whose presence on the track at this point might be reasonably anticipated."

The undisputed facts here established an implied license or invitation. Consequently, plaintiff must be held to be a licensee under the case of Wilhelm v. M., O. & G. R. Co.,

Midland Valley Railroad Co. v. Kellogg, and Gulf, C. & S. F. R. Co. v. Nail, supra. In the cases of C., R. I. & P. R. Co. v. Anderson, 142 Okla. 276, 286 P. 787, and M., K. & T. Ry. Co. v. Sowards, 165 Okla. 214, 25 P. (2d) 641, cited by defendant, no affirmative acts of commission or omission were shown which could be considered sufficient as a basis for a finding of negligence upon the part of the respective defendants in those cases, and in that respect they are therefore distinguishable from the case at bar.

In the case of A., T. & S. F. Ry. Co. v. Phillips, 158 Okla. 141, 12 P. (2d) 908, cited by defendant, a child had been killed while on defendant's railroad tracks. But it was not on a path or a part of the railroad tracks usually or generally used by the public. There was no element of an implied invitation or of acquiescence on the part of the railroad company to the use that the child was making of the railroad premises. Consequently, the child was considered as a trespasser and the duty of the railroad company was not the same as it is in the instant case.

Defendant complains of the giving of an instruction by the trial court which substantially places upon the defendant the duty which we hold here was upon the defendant under the facts in this case. In view of what has previously been said, we think there is no merit in such contention of the defendant.

The defendant next contends there is no causal connection between the negligence averred and the injury of plaintiff. The rule applicable, where it is contended there was no sufficient evidence upon which the jury could have found that the acts of negligence of the defendant were the proximate cause of the injury of the plaintiff, is laid down by the cases of Wichita Falls & N. W. Ry. Co. v. Cover, 65 Okla. 110, 164 P. 660, and Muskogee Electric Co. v. Latty, 77 Okla. 156, 187 P. 491. It is that ordinarily the question of proximate cause is one for the jury and becomes one of law for the court only where the facts are such that all reasonable men must draw the same conclusion from them.

When reasonable men might draw different conclusions from the evidence, proximate cause is a question for the jury. Cherry v. Arnwine, 126 Okla. 285, 259 P. 232; Padgett v. McKissick, 138 Okla. 63, 280 P. 409; Griffin Grocery Co. v. Scroggins, 145 Okla. 9, 293 P. 235.

It cannot be said the evidence was such that reasonable men could not differ as to

whether the injuries of plaintiff were caused by the negligence of the defendant. On the contrary, there is evidence reasonably and sufficiently tending to support the verdict. Such being the case, and in view of the above authorities, the judgment is affirmed.

The Supreme Court acknowledges the aid of Attorneys Ray S. Fellows, Mather M. Eakes, and W. C. Franklin in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Fellows and approved by Mr. Eakes and Mr. Franklin, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, PHELPS, and GIBSON, JJ., concur.