**ICE et al. v. GARDNER.**

No. 28212.    Oct. 11, 1938.

Gaylord R. Wilcox, for plaintiffs in error.

Heber Finch and Speakman & Speakman, for defendant in error.

PHELPS, J. The plaintiff recovered a verdict and judgment against his employers for personal injuries sustained on account of the negligence of a fellow employee while the two employees were moving a pipe line on premises being operated by the defendants under an oil and gas lease, and the defendants appeal.

The defendants did not carry workmen's compensation insurance and the plaintiff therefore elected to prosecute his claim in the district court under the provisions of section 13352, O. S. 1931, 85 Okla. St. Ann. sec. 12, instead of filing it in the State Industrial Commission. That section deprives the employer of the defenses of assumption of risk, contributory negligence, and the fellow servant doctrine. Obviously, if the employment or the circumstances producing the injury were not such as to bring the case within the Workmen's Compensation Act, the right of the defendants to plead and prove the above defenses should be enforced, and the plaintiff would be compelled to withstand such defenses as in the ordinary negligence action for personal injuries.

The case having been tried and submitted to the jury under the provisions of the above section, the defendants contend that the plaintiff was not engaged in hazardous employment coming under the operation of the Workmen's Compensation Act.

The defendants own and operate the oil and gas lease on which plaintiff was injured. There are several oil wells on it, which have been producing small amounts of oil for the past ten years. A pumping station is located thereon, which supplies power to the pumps at the various wells, to raise the oil and pump it on its way. For some reason not made clear by the record, it was or had been necessary to have pipe

lines for the conveyance of water, either to the power plant or between it and the wells. Said pipe line was incident to the operation of the power plant or pumping plant, and physically connected with it. The following is from defendants' testimony: "We had to have a water line for the different lines from the power, and I don't know, exactly—I don't remember the exact date, but we needed quite a lot of line for the changing of the lines up to the power lines. * * *" While said testimony is not as definite as it could have been as to the exact purpose and functioning of the water line, it appears beyond doubt that a water line was necessary to the proper operation of the wells and the power plant.

The plaintiff was a "roustabout," a term used to designate a laborer who is a general handy man in the oil fields, subject to any kind of duty involving manual labor. He and his fellow employee, Romine, had been assigned by the defendants' superintendent to take up the pipe line in question and transport it to another lease, which was also owned by the defendants, and situated some miles distant from the lease in question. The two of them had unearthed the line, and disconnected it at its joints. On the day of the injury they were going along the line with a truck, Romine driving, and loading the joints into the truck preparatory to hauling them to the other lease. Just a few days prior to the injury plaintiff had worked with other men on the power plant itself.

Section 13349, O. S. 1931, 85 Okla. St. Ann. sec. 2, describes the hazardous employments, or "businesses" covered by the act. A great number of such employments are there listed. Among them appears simply the word "wells," and same has repeatedly been construed by this court as including oil wells. The statute does not describe or limit the nature or kind of work in connection with wells (except that by the succeeding section it must be manual or mechanical work), and so we have held that a workman engaged in firing boilers used in connection with the drilling of a well is protected by the act. Oklahoma Company et al. v. State Industrial Commission, 149 Okla. 18, 298 P. 1051. If firing boilers used in connection with the drilling of a well is covered by the act, then it is difficult to perceive why working with a water line or any other instrumentality directly connected with the operation of a well, after it has been drilled, is not equally within the act. While the exact employment now

before us has not heretofore expressly been passed upon in this state, it has indirectly, and generally it has been recognized that the work of a roustabout in the oil fields is protected. In Robinson et al. v. State Industrial Commission, 176 Okla. 619, 56 P.2d 826, 827, it was said that

"The claimant, a man 39 years old, was working for the respondent E. L. Robinson as a roustabout and pumper on a lease near Okemah, Okla., on April 2, 1930. His occupation was admittedly hazardous within the meaning of that term as used in the Workmen's Compensation Act."

See, also, Skelly Oil Co. v. Rose, 176 Okla. 313, 55 P.2d 1019; Oklahoma Natural Gas Co. v. Davis, 181 Okla. 530, 75 P.2d 435.

Section 13350, O. S. 1931, 85 Okla. St. Ann. sec. 3, with certain exceptions not presently involved, provides that "hazardous employment" shall mean manual or mechanical work or labor connected with or incident to one of the industries, plants, factories, lines, occupations, or trades mentioned in the section which we have just been considering. Clearly the plaintiff was engaged in manual or mechanical work or labor, and it is equally apparent that such labor was "connected with or incident to" the operation of "wells," for there was no reason or purpose for having plaintiff work at all except to the end that mechanically the wells function properly and profitably. We believe that both by the letter and spirit of the Workmen's Compensation Act the type of the employment and the nature of plaintiff's duties were intended to be covered by the act. See 2d syllabus by the court in Wilson & Co. v. Musgrave, 180 Okla. 246, 68 P.2d 846.

The defendants also contend that the work did not come within the Workmen's Compensation Act for want of sufficient employees. Section 13351, O. S. 1931, 85 Okla. St. Ann. sec. 11, prescribes that the provisions of the act shall not apply to any employer if he employs less than two workmen. The evidence reveals that aside from plaintiff and his fellow employee, Romine, the defendants employed a pumper at the power house, who acted as a sort of superintendent. They also employed other workmen on the other lease some miles distant. The plaintiff and Romine were engaged in taking pipe from the one lease to the other, or in preparing to transport it, when plaintiff was injured. The defendants proceed on the theory that because plaintiff and Romine were not regular employees, that is, did not work every day, they were not pro-

tected by the Workmen's Compensation Act. As applied to the facts in the instant case, the contention is erroneous. Plaintiff had worked for defendants for five or six months prior to the injury. It is true that he was paid by the day and that his employment was not constant and continuous. However, plaintiff did work almost every day. He missed only three working days in the preceding month.

The Workmen's Compensation Acts of some states follow the English Act and exempt from their provisions those engaged in work "of a casual nature." However, even in those states the exemption usually is held to refer to the nature of the services being performed, rather than its duration. The Oklahoma statute contains no such provision. The protection apparently extends to all workmen engaged in hazardous occupations in the employments described, however brief such employment may be, provided there is in fact an employment. Such has been the rule in states having statutes with no specific exemption. Farrin v. State Industrial Accid. Commission, 104 Ore. 452, 205 P. 984; Claremont Country Club v. Industrial Accident Commission, 174 Cal. 395, 163 P. 209, L. R. A. 1918F, 177 (and see annotation at page 215); Guse v. Industrial Commission, 189 Wis. 471, 205 N. W. 428, as reconsidered and reversed at 208 N. W. 493. The holding herein is not contrary to Harris v. Oklahoma Natural Gas Co., 91 Okla. 39, 216 P. 116, which involved a bystander who was asked by the foreman to "give us a lift"; nor Hogan v. Industrial Commission, 86 Okla. 161, 207 P. 303. In those cases the plaintiff was merely a requested volunteer, and the basis of the decisions was (1) that plaintiff was not working for any specific wage, and (2) was not "employed" at all, and thus did not come within the Workmen's Compensation Act. The reasoning in those cases, especially in the Harris Case, supports the view herein taken.

The defendants further complain that the court erred in giving the jury the following instruction:

"You are instructed that under the provisions of our statute, known as the 'Workmen's Compensation Law,' it is provided that certain benefits shall be paid to an injured employee coming within the provisions of the act, and the statute further provides as follows:

" 'The liability prescribed in the last preceding section shall be exclusive, except that if an employer has failed to secure the payment of compensation for his injured employee, as provided in this act, then an injured employee, or his legal representatives if death results from the injury, may maintain an action in the courts for damages on account of such injury, and in such an action the defendant may not plead or prove as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee;'

"You are, therefore, instructed that if you should find from a preponderance of the evidence in this case that compensation insurance was not carried by the defendants in this action, and that the plaintiff was injured in the course of his employment, and if you should further find that he was injured as a proximate result of the carelessness and negligence of a fellow employee, John Romine, as alleged in plaintiff's petition, while acting in the course of his employment as such employee, then the defendants would be liable in this action for the reason that the negligence of Romine as a servant of the defendants would be imputed to the defendants, and the defendants would be liable the same for his negligence as if the defendants, themselves, had been guilty thereof."

In complaining of this instruction the defendants point out that in substance it told the jury that the case came within the Workmen's Compensation Act. If there had been an issue of fact as to whether it came within the act, the instruction would have been erroneous, but there was no dispute in the evidence on this question. The character of the employment, the number of employees, the failure to carry compensation insurance, and even that the injury arose out of and in the course of the employment, were all established by uncontradicted evidence, some of it from the defendants themselves. Therefore, whether the case came within the act was a question of law, solely for the trial judge's determination. No error was committed in that connection.

Further criticizing the instruction, the defendants say:

"Nowhere did the instruction attempt to tell the jury the rights of the defendants in a court of law in an action for damages for personal injury, even though the work in which plaintiff was engaged was considered as coming within the provisions of the Workmen's Compensation Law. We could scarcely imagine a more improper, unfair and misleading instruction to be given in a civil action for damages for personal injury."

We cannot agree with this statement as

applied to the facts of the case, and as related to the law and the undisputed evidence. As stated above, the case clearly came within the Workmen's Compensation Act. The jury was instructed that the plaintiff could not recover except by proof that his injury was the proximate result of the negligence of Romine, his fellow employee. Elsewhere the court properly instructed the jury on the issues of negligence and proximate cause, and clearly defined those terms. In arguing "the rights of the defendants," as mentioned in the above excerpt from the brief of defendants, they strenuously urge that the accident was caused by negligence of the plaintiff, and also cite authorities to the effect that the fellow servant doctrine is an available defense in the ordinary action for damages for personal injury. But that argument entirely disregards the provisions of section 13352, O. S. 1931, 85 Okla. St. Ann. sec. 12, which is copied verbatim in the above instruction. In view of the fact that in this kind of case said section removes the right ordinarily enjoyed by the defendant, to prove that the injury was caused by the negligence of a fellow servant, or to prove contributory negligence, it is unnecessary to consider the authorities or the extensive argument advanced in this respect by the defendants. Where a statutory provision is clear, plain, and unambiguous, and is patently applicable to the situation, there is no need of discussing case law which otherwise would be controlling. The constitutionality of the section is not questioned by the defendants.

When a case which rightly would be triable before the State Industrial Commission is filed under this section by the plaintiff employee in a court, because of the employer's failure to provide compensation insurance, the defenses available to the employer are really not lessened, for neither may he avail himself of the defenses of assumption of risk, contributory negligence, or the fellow servant doctrine before the Industrial Commission. On the other hand, the burden cast upon the plaintiff employee is greater than in the Industrial Commission, for if he tries the case in court he must prove negligence and proximate cause. Eagle Creek Oil Co. v. Gregston, 99 Okla. 181, 226 P. 339. If he carries the burden, he may possibly recover more, or less, than the amount set by the Workmen's Compensation Act, depending upon factors not material here. But in either event it is incumbent upon him to establish primary negligence, and the injury and causal connection, in addition to the usual proof bringing him within the provisions of the act.

This brings us to consideration of the circumstances of the accident and the defendants' contention that the evidence was insufficient to sustain a finding of primary negligence. The pipe line had been removed from the ground by plaintiff and Romine, his fellow employee, and disjointed, and left lying on top of the ground along its course. They were instructed by defendants' superintendent to go along the line, load the joints on a truck furnished them by the defendants, and move the pipe in that manner to the other lease of the defendants. They proceeded on this mission. The iron pipe was in sections, each being two inches in diameter and 21 feet long. Romine was driving the truck. The two would stop the truck, load the lengths of pipe in the immediate vicinity, Romine taking the forward end of the pipe nearest the front of the truck, and then drive forward a short distance and repeat the operation. Several pieces of pipe had been loaded in the truck, lying flat in the bed, when they came upon a section of it which had an "L" or elbow attached to its end, with a piece of pipe about three feet long attached to the other end of the elbow, so that the shorter end of the pipe was at right angles to and standing out rigidly from the main length of pipe, at the end thereof. This pipe was also twisted or bent. Plaintiff testified that he remonstrated at carrying this piece, being afraid that it would make the load dangerous to haul. But Romine insisted on hauling it, and himself carried the end with the "L" on it, and loaded it onto the truck. Thereafter they loaded several more pieces of pipe prior to the accident.

They were proceeding in a southerly direction and came to a gate through which they had to pass. There were pipe south of the gate which had to be gathered, and also they intended going to a straightening rack, south of the gate, to straighten the bent pieces of pipe before taking same to the other lease. When they approached this gate from the north, it was closed. Romine, driving, stopped the truck. Plaintiff got out and opened the gate, standing south of the west gate post, which was shorter than the east gate post. The gate was 14 feet wide and the truck about six feet wide. As stated heretofore, the end of the aforesaid pipe with the elbow on it was to the front or south end of the truck, near the driver's

seat, where Romine had placed it. It was either loaded or jostled over to the east side of the truck, at the front, so that the shorter side of the "L" projected approximately a foot and a half beyond the side of the truck, pointing to the east. Plaintiff knew that the pipe was projecting, while Romine either did not know or had forgotten. Romine drove the truck through the gate, not through the middle but very close to the east gate post. The outside or "front" of the short side of the "L" thus came in contact with the north side of the east gate post and, as the truck was moving south, this threw the long 21 foot end of the pipe violently in an arc toward the southwest, so that the end of it passed just over the west gate post and struck plaintiff in the head, knocking him about five feet to the southwest, down and unconscious. Romine having driven the truck on through the gate, stopped it and waited for plaintiff. Plaintiff not appearing, Romine went back and found him lying unconscious on the ground, with the end of the pipe also lying there a short distance from him.

In considering the contention that there is no evidence reasonably tending to sustain a finding of primary negligence on the part of the driver, and therefore on the part of his master, it is well to keep in mind that the question, from an appellate viewpoint, is not whether the circumstances impel the finding of negligence, nor even whether the weight of the evidence according to our appraisal is on that side.

"What is or what is not negligence is ordinarily a question for the jury, and not for the court. It is only in cases where the facts are such that all reasonable men must draw the same conclusions from them that the question of negligence becomes one of law for the court, and then only when no recovery can be had upon any view which can properly be taken of the facts which the evidence tends to establish." Wisdom v. Bernhardt, 170 Okla. 385, 40 P.2d 679, 680.

Unless, then, we come to the conclusion that all reasonable men would conclude that the driver was not negligent, the judgment cannot be reversed on this ground.

Due to the following facts, we are of the opinion that all reasonable men would not come to that conclusion, but that probably there would be a considerable difference of opinion on the question. The driver, by the expressed doubt of the plaintiff, had actual notice of the danger in transporting the pipe which caused the injury. The driver himself loaded that end of the pipe, near him and on his side of the truck. The road was straight and the ground was level as it approached the gate. Subtracting the width of the truck from the width of the gate gives a total of eight feet clearance, four feet on a side. Without regard to the condition of his load, although having been warned of the danger, he drove so near to the east gate as to catch the pipe thereon. Having caught it, he still drove on, amid the clatter and unusual disturbance which would necessarily accompany the event, there being pipe both below and above the one in question. The driver admitted in his testimony that if he had observed the condition of the load, he could have avoided the accident. When asked whether he had looked and attempted to ascertain whether he had room to pass through the gate, he answered no. When the failure to observe the condition of his load is added to the near-scraping of the east gate post, and when in connection therewith it is further considered that he had expressly been warned of the danger, and the other facts and circumstances taken into consideration, we cannot say that all reasonable men would conclude oppositely to the verdict and that therefore the verdict was arbitrary.

For us to hold otherwise, even if the express warning had been absent, would be to lay down a rule of law in this state that a driver is not responsible for injury from projecting objects unless such are actually brought to his attention. This would in effect relieve him of the duty to look and observe. It is better that the question remains one of fact, and such is the general rule as to projecting objects. See Ford v. Cunningham Piano Co., 71 Pa. Sup. 380. See, also, Ventimiglia v. Heiman Mfg. Co. (Mo. App.) 256 S. W. 139. In Murray v. Liebman, 231 Mass. 7, 120 N. E. 79, an overhanging spare tire struck plaintiff. It was held a question for the jury. In Boyle v. Leech, 298 Pa. 188, 148 Atl. 70, a pedestrian was struck by a projection from the side of a vehicle. The question of negligence was held for the jury, on the basis that the carelessness lay in either improper loading or improper operation. In Boyle v. Bunting Hdw. Co. (Mo. App.) 238 S. W. 155, a traffic officer was injured by a projecting box which extended beyond the width of the truck. It was said:

"Under the proof, defendant will be charged with knowledge of the projecting box. * * *"

502

An annotation on the question of liability for injury on account of projecting objects appears at 36 A. L. R. 455. A perusal thereof indicates that while many of the courts refuse to call it negligence per se (that question no doubt depending upon statutory provisions), they are fairly uniform in submitting the question to the jury. And in 5 American Jurisprudence, 618, it is said that "negligence in this regard is usually a question for the jury." We are unable to say that all reasonable men would agree that the driver, under the circumstances of the case, used the care which a reasonable and prudent person would have used. It was proper to let the jury decide the question.

We are of the same opinion concerning the question of proximate cause. Of course, the causal connection between the acts and omissions of the driver and the injury to plaintiff, from the physical and mechanical aspect, is obvious. And in order that proximate cause exist, it is not necessary that the driver be proved actually to have foreseen the particular injury and the exact manner of its occurrence. As stated in Butts v. Anthis, 181 Okla. 276, 73 P.2d 843, following Cushing Gasoline Co. v. Hutchins, 93 Okla. 13, 219 P. 408, and a wealth of authority as set forth in the latter decision:

"A person guilty of negligence involving a breach of his duty should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the facts and circumstances which in fact exist, whether they could have been ascertained by reasonable diligence or not, would have thought of at the time of the negligent act as reasonably possible to follow, if they had been suggested to his mind."

Applying the above test to the facts before us: The short side of the "L" shaped pipe was, in fact, protruding. Would a prudent and experienced driver have thought it reasonably possible that contact with the east post would have kicked the other end of the pipe around, if the situation had been suggested to his mind? Clearly it is quite plausible that he would so conclude, or reason and this question is, again, one on which reasonable men might differ, in which case the question must be left to the jury's determination. Lone Star Gas Co. v. Parsons, 159 Okla. 52, 14 P.2d 369; Palacine Oil Co. v. Philpot, 144 Okla. 123, 289 P. 281; C., R. I. & P. Ry. Co. v. McCleary, 175 Okla. 347, 53 P.2d 555. The trial judge was correct in submitting that question to the jury.

The final contention is that the trial court committed error in refusing to grant a new trial on grounds of excessiveness of the verdict. The verdict was $6,000. The jury was authorized to believe the following from the evidence, which in some respects was in conflict: That plaintiff was 30 years of age and was earning $2.50 per day at the time of his injury. Under the standard tables of mortality he had a life expectancy of 35 years. That he was rendered totally and permanently disabled to do manual labor, has a serious brain injury and possibility of eventual insanity. He experienced considerable pain and suffering while in the hospital, and afterward, and at the date of the trial, over a year later than the injury, was still having nervous trouble on account of his condition. By comparison with what the same injury would have obtained under the Workmen's Compensation Act, which would not have allowed for pain and suffering, and by general comparison with verdicts in damage actions of similar character, and from the nature of the case itself, the verdict is not excessive.

The judgment is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and CORN and DAVISON, JJ., concur.