**WEST et al. v. TEXAS CO.**

Civ. A. No. 585.

District Court, E. D. Louisiana, New Orleans Division.

March 29, 1946.

Phelps, Dunbar, Marks & Claverie and W. B. Spencer, all of New Orleans, La., for plaintiff.

Milling, Godchaux; Saal & Milling and Charles H. Blish, all of New Orleans, La., for defendant.

CAILLOUET, District Judge.

The plaintiffs filed suit for "travel time" against the defendant, as their employer from and before the effective date of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., i.e. October 24, 1938. Which "travel time" they alleged was due them from said mentioned date until the termination of their respective employments;—that of the former, on April 27, 1941, and that of the latter, on September 22, 1940.

Defendant moved for the dismissal of both actions on the following grounds, viz.: (1) the Court's lack of jurisdiction of the subject-matter of the complaint; (2) said complaint's failure to state claims upon which relief could be granted; and (3) because the entire DeCoursey claim, and that part of the West claim antedating one year the filing of suit, were prescribed under the one year prescription provided for by Louisiana law.

Such dismissal, on the third ground, followed in due course and the defendant then answered as to the remaining claim of the plaintiff West, pertaining to his employment within the one year immediately preceding the filing of suit on February 18, 1942.

Re-urging as special defenses the first two grounds for dismissal that it had previously presented by its aforementioned motion to dismiss, defendant then made answer seriatim to the allegations of the complaint, in the course of which it expressly admitted that it "was engaged in the business of drilling and operating oil and gas wells and of producing, buying, selling, storing, processing, shipping and transporting oil, gas, mineral products and petroleum products, and that certain of the oil, gas, mineral products and petroleum products were produced or stored or processed in the State of Louisiana, and substantially all of the products thus produced in the State of Louisiana were shipped and transported to points within and without the State of Louisiana."

Defendant furthermore admitted that plaintiff West, during the period from and inclusive of February 18th through April 27th, 1941, worked for it as an oil field roustabout and, at times, as a pumper, in the Lake Salvador and Bayou Perot oil fields, in southeast Louisiana,—Lake Salvador being a large navigable lake located approximately midway between the Mississippi River, on the east, and Bayou Lafourche, on the west, while Bayou Perot is a navigable stream, connecting Lake Salvador, on the north, with Little Lake, on the south.

The defendant's oil producing operations in these two mentioned fields, wherein plaintiff was so employed, having been "water operations", i.e. conducted on water by use of marine equipment and piling constructions, and at neither lease site did the defendant company maintain facilities for the housing of its employees.

It was furthermore specifically admitted by the plaintiff that the defendant did not require its said employees to reside at any particular place, it being a matter of indifference to the company where its employees actually resided, and all, including plaintiff West, daily went to and returned from the drilling site at which employed, except on the rare occasions, when any one or more of them "worked around the clock"; and, also, was it admitted by him that boats were the sole transportation facility used to move back and forth between either of the two mentioned drilling sites and what is known as Fleming's Landing, situated in or near the town of Barataria in Jefferson Parish, Louisiana, and being the nearest and most accessible terminal point for such boat transportation to and from the defendant's said oil production areas.

It is uncontroverted that the defendant company contracted with third persons for their operation, with their own crews, of lugger-type boats between Fleming's Landing and the two lease sites, and that while the employer did not prescribe what the employee had to do in order to reach and come away from the work situs where employed, nevertheless the daily use of such so-provided boat transportation was made available, as an accommodation, to all of defendant's employees, free of cost, and plaintiff West regularly utilized the same, even though he remained, at all times, free to otherwise provide for his transportation, there having been always available other boats in or near Barataria.

On the trial, however, the plaintiff swore that had he and his fellow-employees so exercised their option with respect to moving to and from their employer's drilling sites, the cost necessarily incurred would have exceeded the wages received, and that, with the single exception of the field superintendent, who was furnished a speed boat for moving about in the discharge of his duties, he knew of no employee who, during the period of his own employment in this area from December 1940 through April 27, 1941, made use of any other boat transportation than that so supplied by the defendant.

West commenced work as a roustabout in December 1940, under employment by defendant's field foreman or superintendent Farrell F. Lewis, who, on the trial date, was no longer in the company's service. Plaintiff had previously been employed, continuously since 1936, in the defendant's drilling operations in what he termed the New Iberia area, and it is to be particularly noted that he was, undoubtedly, entirely familiar with conditions appertaining to employment in an oil company's "water operations", such as was conducted by defendant on its Lake Salvador and Bayou Perot leases, inasmuch as he had worked for The Texas Company, his employer, in the nearby Parish of Terrebonne, where, as is commonly known, said company has carried on extensive "water operations" in the coastal waters for over thirteen years, at least, as its sole oil drilling and producing activity.

And now, first considering defendant's contention that plaintiff West failed to satisfactorily establish that he, himself, was engaged in interstate commerce or in the production of goods for interstate commerce, within the intendment of the Fair Labor Standards Act, 29 U.S.C.A. §§ 201–219, and that, therefore, his action should be dismissed, let it first be observed that, admittedly, at least *some* of defendant's aggregated oil production from its Louisiana drilling sites found its way into interstate commerce and that in the producing and shipping of defendant's oil on and from its Lake Salvador and Bayou Perot leases, plaintiff was employed by it, in the main, as a roustabout, i.e. a general handy man in the oil fields, subject to any kind of duty involving manual labor (Ice v. Gardner, 1938, 183 Okl. 496, 83 P.2d 378, 379, at 381) and, on occasion, as a pumper, which involved his having care of the oil storage stocks, charged with the duty of transferring oil, at times, from one storage tank to another or to transportation barges, and also the taking of samples from the producing wells and ascertaining their flow, both as to quantity and quality.

West, employee of The Texas Company that was unquestionably engaged in interstate commerce and "in the production of goods for commerce", was, himself, likewise engaged at least in "producing" such goods, inasmuch as he was employed in occupations necessary to their production,— "goods," as defined by the Act, meaning,

"wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, * * *" and "produced", meaning "produced, manufactured, mined, handled, or in any other manner worked on in any State", it being specifically provided, furthermore, that an employee "shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State." Section 3 of Act, (i) and (j), 29 U.S.C.A. § 203(i, j).

See, in this connection, the following four cases, viz.: United States v. Darby, 1941, 312 U.S. 100, 657, 61 S.Ct. 451, at 458, 459, 85 L.Ed. 609, 132 A.L.R. 1430; Kirschbaum v. Walling, 1942, 316 U.S. 517, 62 S.Ct. 1116, at (2, 4), pages 1120, 1121, 86 L.Ed. 1638; Warren-Bradshaw Drilling Co. v. Hall, 1942, 317 U.S. 88, 63 S.Ct. 125, at (2, 3), (4), and (5, 7), pages 126, 127, 87 L.Ed. 83; Walling v. Jacksonville Paper Co., 1943, 317 U.S. 564, 63 S.Ct. 332, at (12, 14), page 337, 87 L.Ed. 460.

The testimony as to the defendant Company's employment procedure, pertaining to the drilling and production operations it conducted on its Lake Salvador and Bayou Perot leases, was substantially as follows, viz.:

Plaintiff West was hired to be a roustabout, as already stated, by the Company's field superintendent Lewis, upon whom West called in keeping with instructions given him, he testified, "from the main office at Houma". Lewis told him, he furthermore swore, "Report to Fleming's Canal Store to go to work". He interpreted this to mean that if he was to work for The Texas Company, then he should be on hand at Fleming's Canal Store. However, he did not know just where he was to work, he continued; did not know whether the Company's operations were at the canal, or not. (Tr. 10, 11.)

The witness Lewis testified that he was employed as the Company's field foreman during the period from February 18, 1941, to April 27, 1941, having under his jurisdiction the drilling of oil wells, with supervision and direction of drillers, pumpers and roustabouts, and that the customary directive to the company employees, which he gave to West, was intended to have him be present at Fleming's Landing in time to catch the boat for transportation to the work site, some six or seven miles out on the lease. (Tr. 38, 39.)

The witness W. H. McWhirter, who was attached to the defendant company's drilling department within the Lake Salvador area during the aforementioned period from February 18th to April 27th, 1941, but who left defendant's service in September 1942, testified that he had been instructed to report at Fleming's Landing to there catch the boat in which defendant's employees daily made the round-trip journey between lease sites and Fleming's Landing. (Tr. 15, 18, 19.) He knew, said he, of no hiring of himself to do work at said Fleming's Landing. (Tr. 22.)

S. M. Hattaway, driller and relief production foreman of the Company in the same area, during said mentioned work period, testified that he exercised authority as foreman over the drillers, and also over the roustabouts when he acted as relief production foreman; that the employees were not instructed to report to work at Fleming's Landing, but were told that if they cared to work for the Company in the Lake Salvador field, they should be on hand at the landing to avail themselves of the regular free transportation to and from the lease sites provided by the Company. (Tr. 32.)

N. F. Belanger was relief head roustabout, in the said mentioned drilling and production operations of the defendant, during the two months' period at issue. He testified that plaintiff West worked under him and that he, the witness, never directed said employee to report to work at Fleming's Landing; but West was instructed, however, that the boat left each morning at a stated fixed time and that whenever he, West, intended to go on a day's work, he should be at the landing on time for the boat's departure. (Tr. 23, 24.)

It is clearly established that each trip, made in the Company boat, between Fleming's Landing to the Lake Salvador oil field normally consumed one hour, while similar trips to and from the Bayou Perot oil field usually took one hour and twenty minutes; and that defendant never paid its employees such "travel time", except that, having on April 1, 1941, adopted the policy of paying additional compensation to such of its employees as traveled by water more than one hour, in going to and from the scene of the drilling and producing operations, the defendant Company did pay to plaintiff West such remuneration amounting to 77 cents

a trip, going to the Bayou Perot lease on April 25, 1941, and returning therefrom, at the close of his employment and the end of an "around-the-clock" three days' service as pumper, on or about April 27, 1941.

It is as clearly established that on such boat trips, no one was in charge but the boatman who hired out his boat to the defendant Company for the transportation of its employees hereinabove detailed, or his own employee. (Tr. 28, 41, 43, 66.) Nor were such Company employees ever directed to do any work, nor was work expected of them, during the course of any boat voyage to or from either the Lake Salvador lease or the Bayou Perot lease.

Plaintiff West although admitting that he, himself, was never asked to do work while riding, nevertheless testified that the employees who daily rode the chartered boat between Fleming's Landing and the Company leases would, under order of their fellow-employees, the roustabout foremen Wicker and Belanger, four or five days out of the week load on the boat all such minor supplies, as pipe connections, etc., found awaiting them at the boat landing and which were required for the day's work on the leases, but that the defendant Company regularly operated a supply barge or boat to transport all "heavy stuff" needed in its drilling and producing operations in the Lake Salvador and Bayou Perot oil fields. (Tr. 7, 9, 12, 13, 14.)

Plaintiff was far from convincing in his testimony to the effect that he was actually *ordered* by a company representative acting within the course and scope of his employment, or otherwise, to join his twenty-two fellow-employees in so placing on board the boat such miscellaneous minor supplies, described by him and other witnesses as pipe connections, nipples, or other small pipe fittings, waste for wiping of hands, paint brushes, small hand tools, and, occasionally, a barrel of asphalt. (Tr. 12, 14, 24, 40.)

For instance he swore that there would sometimes be a lagging back by some of his fellow-employees, which is corroborated by the witness McWhirter (Tr. 13, 14, 17, 18), and that if the supplies were for use by the roustabouts, and not by the drillers, then the workmen at interest (or was it a foreman?) would say "Let's all the roustabouts get it".

In this connection, it should be noted that the witness McWhirter testified that he loaded some of the aforementioned supplies upon the boat at Fleming's Landing, at the foreman's request, which he, the witness, considered an instruction;—the foreman saving "The supplies are there; let's go load them". (Tr. 15, 16, 17.)

Both N. F. Belanger and S. M. Hattaway were foremen, and each testified positively that he, at no time, *ordered* their fellow-employees to so load said supplies.

Belanger swore that it was he and the roustabout crew that did the loading, but that this was without order from him, the employees upon arriving at Fleming's Landing, and seeing such minor supplies on the wharf, immediately proceeding to load them aboard the boat; that if employees came late, they found the loading completed; that he, himself, reported late once and such was the case. Asked "Who usually got there first", he answered that he did not know, since he never did get there early enough to find out. (Tr. 25, 26, 27.) He testified, further, that he considered himself to have had no authority whatever over any fellow-employee until all had disembarked at the lease site and met at the tool house, where he and they put on work clothes just before beginning work; and that, when he and his fellow-employees "got off their shift", all would again repair to the tool house and effect change of clothing, before embarking for the day's return trip to Fleming's Landing. (Tr. 31.)

Hattaway swore that if supplies were on the wharf that he had need of on his drilling rig, he would pick them up and place them on the boat. If he apparently required assistance, he said, then his fellow-employees would give him a hand, but he, at no time, directed or instructed anyone to so do, although there probably were occasions when he said "Come on boys, let's load this stuff"; and the witness swore, also, that he exercised no supervision whatever over his said fellow-employees, either at Fleming's Landing or on board the boat. (Tr. 32–35.)

The testimony of the witness McWhirter, relative to the loading of the aforementioned minor supplies which on no occasion took more than a few minutes, is very significant. He swore that not all of the men willingly helped in the loading; some "hid out", or "ratted", and he and their fellow-employees had to round them up; this was done without direction from the foremen, who said nothing, the men, themselves, seeking to prevail upon their co-workers to join in the loading. (Tr. 17, 18.)

Such loading of supplies took place, so the testimony runs, several times a week;

plaintiff West swearing: four or five days (Tr. 7); McWhirter, three or four days (Tr. 16); Belanger, every third or fourth day (Tr. 24); and Hattaway and Lewis, usually twice-a-week (Tr. 33, 39).

Trial of the action having taken place before the Court, without a jury, and in order to relieve Counsel of the necessity of complying with the local (Civil) court rule 2(d), the following findings of fact and conclusions of law are now made by the Court, viz.:

## Findings of Fact.

1. Plaintiff was employed by defendant to work as a roustabout in its oil drilling and producing operations in the Lake Salvador and Bayou Perot oil fields within the Eastern District of Louisiana, and did so serve said company, and also as a pumper by special around-the-clock assignment for three consecutive days, on two different occasions, during the period of time running from February 18th to April 27th, 1941, both dates inclusive.

2. Defendant's said oil drilling and producing operations were incidental to and an integrated part of the company's production of oil for movement in intrastate and interstate commerce.

3. Such oil drilling and producing operations were what are known as "water operations" and the drilling and production sites, upon which there is set up piling and marine equipment, were reached only by boat transportation, the nearest and most convenient land terminal point for which was Fleming's Landing, in or near the Town of Barataria, Jefferson Parish, Louisiana. Such boat transportation was provided by defendant to its employees, including plaintiff West, free of cost and as an accommodation to them, but any employee was free to use whatever other facility he cared to, at his own expense, in order to travel to and from the work situs on defendant's said Lake Salvador and Bayou Perot leases; however, during the period of time hereinabove mentioned under (1), all employees availed themselves of the free boat service thus provided, except that whenever an employee was assigned to serve as pumper, on occasion, he was then furnished other free means of water transportation to and from whichever lease site to which assigned.

Each trip to and from the Lake Salvador lease normally consumed one hour, whatever the boat used, and each trip to and from the Bayou Perot lease, one hour and twenty minutes.

4. The contract of employment existing between plaintiff and defendant during the period in question contemplated a work tour or shift of eight hours to be performed by plaintiff at the scene of defendant's oil well drilling and producing operations on either the Lake Salvador lease or the Bayou Perot lease, and both plaintiff and defendant so understood it; although on occasion, when assigned as a pumper, as aforesaid, plaintiff then remained on the storage site around-the-clock, for three days at the time, as caretaker and available to perform such *actual* work as became necessary, but which, in the aggregate, never consumed as much as eight hours per day.

5. While plaintiff West and his fellow-employees were on whatever boat was made available to them by the defendant for their free transportation, at their option, to and from the Lake Salvador and Bayou Perot leases, respectively, all such employees were free from defendant's supervision or control, but, on the average of two to three times a week, at the most, certain minor oil field material and supplies were loaded on board the vessel at Fleming's Landing in the morning by the employees, twenty-three in number, who acted under no specific direction or order from anyone but in mutual recognition of the fact that such material and supplies were needed by them in the day's work ahead on the leases.

6. Defendant has been engaged for many years in the prosecution of "water operations" in Louisiana, carrying on many of its oil drilling and producing at well sites accessible only by use of boats, and has never paid any "travel time" to employees at work in such "water operations", until it adopted the policy, on April 1, 1941, of paying to all of its employees who traveled by water more than one hour per day in order to go to and return from the lease sites where they worked, additional compensation for whatever time consumed in such traveling in excess of one hour per day. Plaintiff West was properly paid, twice, the sum of 77 cents, covering "travel time", so calculated, for the outgoing and return trip from and to Fleming's Landing, on plaintiff's second and final "around-the-clock" assignment to work as a pumper, and no more than these two payments were actually due him under said newly-adopted policy.

Conclusions of Law.

1. The Court was, and is, vested with jurisdiction to hear and decide the issue between the parties herein.

2. While on the way to and from the Lake Salvador and Bayou Perot lease sites of his employer, The Texas Company, plaintiff West was not working and was not entitled to receive pay from defendant for the time consumed in travel; except that, under the Company's newly-adopted policy of April 1, 1941, providing for the payment, to employees who traveled by water more than one hour a day in going to and returning from the work situs, of additional compensation covering the excess time so spent in travel, plaintiff was entitled to receive, as "travel time", the two 77 cents payments that defendant made him, but no more.

In view of the premises, let judgment be forthwith entered rejecting and dismissing plaintiff's demand, with costs.