1997 OK 124

**Eddie L. ANDERSON, Plaintiff,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY,**
Defendant.

No. 86102.

Supreme Court of Oklahoma.

Oct. 14, 1997.

Rehearing Denied Dec. 18, 1997.

W.C. Sellers, Jr., W.C. Sellers, W.C. "Bill" Sellers, Inc., Sapulpa, Mike Jones, Jones Law Office, Bristow, for Plaintiff.

Stephen J. Rodolf, Jeffrey C. Sacra, Barkley & Rodolf, Tulsa, for Defendant.

HODGES, Justice.

¶1 We are presented with a question certified from the United States District Court for the Northern District of Oklahoma, pursuant to the Uniform Certification of Questions of Law Act, Okla.Stat. tit. 20, §§ 1601–11 (1991), to wit:

> Does Oklahoma law recognize the tort of bad faith for unjustified denial of workers' compensation insurance coverage or the assertion of a groundless defense, based on alleged damages incurred for the carrier's conduct that predated the claimant's worker's compensation award?

We answer the question in the negative.

## I. Facts

¶2 While working for the L.B. Jackson Drilling Company, plaintiff, Eddie L. Anderson, was injured when he was struck in the eye by an object thrown from a lawn mower. United States Fidelity and Guaranty Company (USF & G) was the employer's worker's compensation insurance carrier. On March 18, 1988, Anderson was adjudicated to be 100 percent permanently disabled in his left eye.

¶3 Alleging that he had suffered a worsening of his condition, Anderson filed a motion to reopen[1] his claim on April 1, 1991, seeking payment for additional medical treatment. On April 29, 1991, USF & G contested Anderson's claim and filed an objection to

---

1. USF & G argues that Anderson's motion to reopen mischaracterizes the facts. Because we address the facts as presented by the order certifying the question and as established by the record, there is no need to address the plaintiff's characterization of the facts presented in the motion to reopen.

his medical report. Then almost six months later on January 21, 1992, USF & G authorized medical treatment.

¶ 4 Later the Worker's Compensation Court awarded Anderson temporary total disability benefits for the period from February 26, 1992, through June 1992, and later awarded benefits for the period from June 1991 through February 1992. USF & G promptly paid the Worker's Compensation awards.

¶ 5 Anderson filed suit for bad faith and intentional infliction of emotional distress in the district court for the State of Oklahoma. Anderson's claims are based solely on USF & G's actions taken before the Worker's Compensation Court's awards issued. The case was removed to the United States District Court for the Northern District of Oklahoma. The Honorable Thomas R. Brett certified the question of whether Anderson had a tort claim under Oklahoma law for USF & G's action taken before the Worker's Compensation Court's award.

## II. Analysis

¶ 6 A review of the cases reveals that the tort liability of a worker's compensation insurer "arises only after there has been an award against the employer." *Whitson v. Oklahoma Farmers Union Mut. Ins. Co.,* 1995 OK 4, 889 P.2d 285. In 1992, in *Goodwin v. Old Republic Ins. Co.,* 1992 OK 34, 828 P.2d 431, the issue was whether the plaintiff had a bad faith claim for actions taken by the insurer after a Worker's Compensation Court's award. Assuming that an insurer could be subject to a bad faith claim for failure to pay benefits under an award, this Court found that the facts did not support such an award. This Court noted: "If an employee is injured by an insurer's bad faith-intentional failure to pay benefits under an award, the employee has a common law action in tort. . . ." *Id.* at 435.

¶ 7 Then in January 1995, this Court addressed the issue of whether the plaintiff had a tort claim for his employer's conduct regarding the plaintiff's worker's compensation claim when such conduct occurred before an award was entered. *Whitson,* 889 P.2d at 285. This Court found that the plaintiff did not have a fraud or bad faith claim for the

employer's pre-award conduct. *Id.* at 287–88.

¶ 8 Although *Whitson* involved an employer rather than an insurer, this Court left no doubt that a bad-faith action would not lie against a worker's compensation insurer for pre-award misconduct: "We also held in *Goodwin* that 'a bad faith claim is separate and apart from the work relationship, and it arises against the insurer only after there has been an award against the employer.'" *Id.* at 287. This Court reasoned:

> There is no reason to allow a tort cause of action for a too aggressive defense of a worker['s] compensation claim—especially where the claimant is no longer in the defendant's employ. A successful plaintiff in a personal injury action certainly has no cause of action against the defendant for the defendant's unsuccessful attempts to defeat [an] action against [it].

*Id.* at 288.

¶ 9 The certifying court perceived a potential conflict between these decisions and the July 1995 decision in *McGehee v. State Ins. Fund,* 1995 OK 85, 904 P.2d 70. *McGehee* addressed the issue of whether the plaintiff had timely filed a claim. The basis of the potential conflict is the statement:

> Assuming that the employee's alleged bad faith claim arose at the latest possible date when he knew or should have known that the Fund was acting in bad faith when it denied his claim, it accrued sometime prior to the Workers' Compensation Court's issuance of its order finding that the Fund was estopped from denying [the employee's] coverage under the [employer's] policy.

*Id.* at 73.

¶ 10 *McGehee* merely made an "even if" assumption. That is even if there was a bad faith cause of action before the compensation award, plaintiff's claim was time barred. The issue was confined to "whether the employee's bad faith denial of a worker's compensation claim against the State Insurance Fund . . . was timely brought." *Id.* at 71. By making an assumption as to the date the claim arose, this Court did not undermine its position in *Whitson.*

### III. Conclusion

¶ 11  In *Whitson*, 889 P.2d at 285, this Court definitely resolved the issue of whether a bad-faith claim for pre-award conduct against a worker's compensation insurer was liable. We stated that it was not. We have not varied from this position. Therefore, we answer the certified question that Oklahoma law does not recognize the tort of bad faith for unjustified denial of worker's compensation insurance coverage or the assertion of a groundless defense based on alleged damages incurred for the carrier's conduct that predated the claimant's worker's compensation award. Certified question answered in the negative.

### CERTIFIED QUESTION ANSWERED.

¶ 12  SUMMERS, V.C.J., and HODGES, HARGRAVE and WATT, JJ., concur.

¶ 13  SIMMS, J., concurs specially.

¶ 14  LAVENDER, OPALA and ALMA WILSON, JJ., dissent.

¶ 15  KAUGER, C.J., recused.

SIMMS, Justice, specially concurring:

¶ 1  I concur with the majority that the tort of bad faith will not lie against a workers' compensation insurer for pre-award conduct. I write separately only to stress that this Court has never explicitly held that such an action would lie for post-award conduct. I fear that today's opinion implies otherwise.

LAVENDER, Justice, with whom OPALA and ALMA WILSON, JJ., join, dissenting.

¶ 1  I dissent to the majority opinion. In my view, this Court should recognize a common law tort claim for bad faith in favor of a workers' compensation claimant against a workers' compensation insurance carrier for the manner in which the latter handles, litigates or defends a workers' compensation claim. A tort claim should be viable, in my opinion, when a carrier denies or contests a claim for workers' compensation benefits, with knowledge there is no legitimate legal or factual basis for defense to the claim, or it is in some other appropriate manner shown, the carrier unreasonably, and in bad faith, denies or contests the claim. I would not hold, however, a tort suit viable when the insurer's conduct evinces mere negligence in the manner it handles, litigates or defends against a workers' compensation claim.

### PART I. A WORKERS' COMPENSATION CLAIMANT IS OWED BY A WORKERS' COMPENSATION CARRIER A DUTY OF GOOD FAITH AND FAIR DEALING WITH RESPECT TO THE PRE–AWARD HANDLING OF A WORKERS' COMPENSATION INSURANCE CLAIM AND CLAIMANT HAS STANDING TO BRING A BAD FAITH CLAIM AGAINST THE CARRIER.

¶ 2  Although an insurer's duty to deal fairly and in good faith does not extend to every party that may be the eventual recipient of insurance proceeds, when there is a contractual or statutory relationship between the carrier and the party asserting the bad faith claim, the duty will generally attach. *Goodwin v. Old Republic Insurance Co.*, 1992 OK 34, 828 P.2d 431, 432–433; *Roach v. Atlas Life Ins. Co.*, 1989 OK 27, 769 P.2d 158, 161. *Goodwin* recognized an explicit statutory relationship between an insurer and an injured worker in the workers' compensation context by virtue of 85 O.S.1981, § 65.3, a section of the Oklahoma Workers' Compensation Act (Act), 85 O.S.1981, § 1 et seq., as amended (now 85 O.S.1991, § 1 et seq., as amended). 828 P.2d at 433. Section 65.3 expressly provides that a contract of insurance issued by a carrier for the purpose of insuring an employer against liability under the Act is conclusively presumed to be for the benefit of each person upon whom insurance premiums are paid, collected, or whose employment is considered or used in determining the amount of premium collected. Thus, even though the employer might technically be the insured under a workers' compensation insurance policy, *Goodwin* recognized a claimant/employee is a third-party beneficiary under the insurance contract [828 P.2d at 433], is in the same class as an insured and may expect prompt payment of his/her claim unless the insurer in good faith asserts a basis for contesting it. *Id.* at 434.

¶ 3  To understand the third-party beneficiary status of an injured worker a brief look at the purposes behind workers' compensation legislation is helpful. Generally, workers' compensation legislation is a mutual

compromise in which an employee relinquishes his/her right to sue the employer or co-employees for damages sustained in job-related injuries at common law; and the employer accepts no-fault liability for a statutorily set measure of damages. *Weber v. Armco, Inc.,* 1983 OK 53, 663 P.2d 1221, 1224. The Act exists to assure a worker and his/her dependents reasonable support and maintenance during a period of forced idleness resulting from job-related accidents that could destroy or impair earning capacity. *Crocker v. Crocker,* 1991 OK 130, 824 P.2d 1117, 1120. The Act is intended to provide benefits to the injured workers and their dependents and to prevent the worker or dependents from becoming public charges. *Id.* One method to insure that an employer has the ability to pay the compensation benefits to a claimant under the Act is for an employer to contract with an insurance carrier to provide the benefits to the injured worker when a job-related accident occurs.

¶4 As noted in *Goodwin,* an insurance carrier is generally required by statute to in good faith effectuate prompt, fair and equitable settlement of claims in which liability has become reasonably clear. 828 P.2d at 434. As this Court also earlier understood in *Christian v. American Home Assurance Co.,* 1977 OK 141, 577 P.2d 899, a leading case in the area of an insurance company's duty to act in good faith and to deal fairly with its insured, a substantial part of the right purchased via an insurance policy is the right to receive the benefits promptly. *Id.* at 903. *Christian* also recognized that unwarranted delay precipitates economic hardship on the insured and that an insurance company has a duty to defend an insurance claim in good faith. *Id.* at 903–904.

¶5 In my opinion, as a third-party beneficiary under a workers' compensation insurance policy, an injured worker, being the person at risk of enduring economic hardship from unwarranted delay, is entitled to expect prompt payment of a valid claim for benefits. The status of an injured worker as a third-party beneficiary under a workers' compensation insurance policy is analogous to the life insurance policy beneficiary dealt with in *Roach v. Atlas Life Ins. Co., supra.* In *Roach* this Court recognized a life insurance policy beneficiary, being a third-party benefi-

ciary under a life insurance policy obtained by the insured, had a status sufficient for entitlement to assert an action for breach of the duty of good faith and fair dealing against a life insurance company. An injured worker should also be entitled to expect the carrier will only defend a claim for workers' compensation benefits in good faith. It is, thus, my view, as a third-party beneficiary of this type of insurance contract, the injured claimant/employee is owed a duty of good faith and fair dealing by the workers' compensation insurer and the claimant should be allowed a common law bad faith tort claim against the carrier if this duty is breached, whether the bad faith conduct occurs prior or subsequent to an award by the WCC. I can discern no valid reason that would justify foreclosing a common law tort suit by an injured worker for breach of these duties by a workers' compensation insurance carrier, or which would preclude the potential for a viable tort suit against a carrier for bad faith conduct associated with its pre-award actions while defending a claim in the WCC.

**PART II. THIS COURT'S PREVIOUS CASES DO NOT PRECLUDE A COMMON LAW TORT CLAIM AGAINST THE CARRIER FOR PRE–AWARD BAD FAITH CONDUCT.**

¶6 In *Goodwin* this Court, to a limited degree, dealt with whether a claimant/employee could subject an employer's workers' compensation insurance carrier to liability in tort for the carrier's bad faith conduct in relation to a workers' compensation claim. The question presented was whether the carrier could be held liable in tort for the wilful, malicious and bad faith refusal to pay a claimant's workers' compensation award. In that the facts in *Goodwin* did not support a claim for bad faith refusal to pay workers' compensation benefits, it was unnecessary to definitively determine whether such a common law claim would be recognized in Oklahoma—instead the Court merely assumed such a claim existed. *Id.* at 431–432, 435–436.

¶7 Although certain language in *Goodwin* was interpreted in *Whitson v. Oklahoma Farmers Union Mutual Insurance Compa-*

*ny,* 1995 OK 4, 889 P.2d 285 to stand for the proposition *potential liability of the carrier can only arise for conduct occurring after an award against an employer for workers' compensation benefits has been entered by the WCC,* in my view, this Court should now reject such an interpretation of *Goodwin.* Such a limitation appears to misinterpret *Goodwin* and, even if it does not, the limitation is an unsound circumscription on the right of a claimant/employee to seek recompense for the pre-award conduct of a workers' compensation carrier amounting to the bad faith denial or contest of a claim for workers' compensation benefits.

¶ 8   Any language in *Goodwin* that would support limitation of the tort to post-award conduct must be read in the context of the facts and claims asserted by the plaintiff in that case and should not be used, as the majority uses it here, to limit a bad faith claim against a carrier to only post-award conduct.  To the extent *Whitson* interpreted *Goodwin* to have such a limitation in a suit against a carrier, this Court should expressly disapprove *Whitson.*  *Whitson* involved answering the question, among others, whether a workers' compensation claimant could have a bad faith claim against his employer.  It did not involve a potential claim against a workers' compensation insurer.  Because of this distinction *Whitson* should not be used to support proscription of a claim against a carrier.

¶ 9   In *Goodwin,* the claim of bad faith against the carrier was based on the post-award conduct of appealing a WCC order awarding benefits and delaying payment for a period of eighteen (18) days after the appeal of the matter had been finalized and benefits were due.  828 P.2d at 432 and 436.  Also, the plaintiff in *Goodwin* expressly conceded his bad faith claim was not based on any conduct of the carrier during the trial of his workers' compensation claim, i.e prior to the issuance of the workers' compensation award.  *Id.* at 432.  Thus, statements by this Court in *Goodwin* to the effect a bad faith claim would arise only after there has been an award against the employer must be viewed as merely responding to the issues that were before the Court.  They cannot be taken as definitively precluding a claim based

on conduct that predated an actual award in favor of the claimant/employee.

¶ 10   Further, to limit a bad faith tort action in the workers' compensation context to only post-award conduct, including post-award conduct relating to appeal, makes no logical sense when one understands that such an award would not be finally conclusive until any appeal (if one was instituted) to either an *en banc* panel of the WCC or to this Court under the provisions of 85 O.S.Supp.1995, § 3.6 is finalized.  An appeal, of course, is merely a continuation of the litigation, albeit at the *en banc* panel or appellate levels, where the insurer may reiterate available defenses under certain defined review standards.

¶ 11   Contrary to the view expressed in the majority's opinion, the case of *McGehee v. State Insurance Fund,* 1995 OK 85, 904 P.2d 70 also shows that *Goodwin* was not meant to limit a bad faith claim to only post-award conduct.  In *McGehee* the plaintiff was claiming bad faith on the part of the insurer relating to conduct in contesting his claim for workers' compensation benefits, at least part of which conduct **predated any award by the WCC.**  In ruling that both of two potentially applicable statutes of limitation had run on the plaintiff's bad faith claim against the carrier, this Court implicitly acknowledged a bad faith claim could be based on pre-award conduct when it was assumed the claim arose at the latest when the plaintiff knew or should have known of the carrier's bad faith conduct—a time that was sometime **prior to the WCC's award of benefits.**  *Id.* at 73.  If a claim for bad faith conduct of the insurer was limited to only its post-award conduct, it would have constituted a legal impossibility to hold the statute of limitation began to run prior to any claim arising.  Thus, *Goodwin* does not stand for the proposition a bad faith claim against a workers' compensation insurance carrier may only be based on the carrier's post-award conduct.

¶ 12   Finally, I note that my recognition of the potential for a tort suit against a carrier for pre-award conduct would not mean an insurer who contests a claim for benefits brought under the Act is automati-

cally at peril of subjection to a common law bad faith action. *See Christian, supra,* 577 P.2d at 904–905. A tort action would not be viable where the insurer presents legitimate legal or factual defenses to the claim, even though the defense(s) do not ultimately prevail and benefits are eventually awarded by the WCC. I recognize, as this Court recognized in *Christian,* that various genuine disputes between a carrier and an insured (here a third-party beneficiary) may exist as to whether a claimant is actually entitled to the insurance proceeds or to a particular amount of benefits. *Id.* A workers' compensation carrier should not be penalized with tort liability where it raises genuine or justifiable defenses to a claim, even though the defenses do not ultimately succeed. Nor, in my opinion, may the insurer be subjected to liability in the workers' compensation context for mere negligence in the manner of its handling, litigating or defending a claim for benefits. Mere negligent behavior cannot be equated with bad faith conduct on the part of the carrier. Under my analysis of the situation, the tort would be viable in the workers' compensation context only when a carrier denies or contests a claim for compensation benefits, with knowledge there is no legitimate legal or factual basis for defense to the claim, or it is in some other appropriate manner shown, the carrier unreasonably, and in bad faith, denies or contests the claim.

¶ 13 For the reasons specified above, I respectfully dissent to the majority opinion issued in this matter.