2004 OK 54

**Keir DEANDA, Plaintiff,**

v.

**AIU INSURANCE and AIG Claim Services, Inc., Defendants.**

No. 98,986.

Supreme Court of Oklahoma.

June 29, 2004.

As Corrected July 20, 2004.

---

form Certification of Questions of Law Act, 20 O.S.2001, § 1601 et seq.: "Does Oklahoma recognize the tort of bad faith against a workers' compensation insurance carrier for post-award conduct?" We answer, consistent with our recent holding in *Kuykendall v. Gulfstream Aerospace Technologies*, 2002 OK 96, 66 P.3d 374, Oklahoma does not recognize such a tort. Title 85 O.S.2001, § 42 provides the sole remedy when an insurance company fails to pay the compensation awarded by the Workers' Compensation Court.

## I. FACTS

¶2 The plaintiff, Keir DeAnda, was an employee of Terra Telecom. The defendant, AIU Insurance Company, issued a policy for workers' compensation insurance to Terra Telecom, which was in effect at the time of DeAnda's injury. The defendant, AIG Claim Services, Inc., is the third party administrator for AIU, responsible for the payment of allowed benefits, and authorization and payment of reasonable and necessary medical care related to DeAnda's workers' compensation claim.

¶3 The Workers' Compensation Court entered orders providing for reasonable and necessary medical expenses, and ordered reimbursement of expenses, prepayment of expenses and interest. DeAnda alleges that authorization for reasonable and necessary medical expenses, payments of reimbursements, prepayment of expenses and payment of interest were unreasonably delayed. The defendants deny that any award was entered determining what treatment was reasonable and necessary, or that their denial of medical treatment or delay in reimbursement was unreasonable. They further deny that the orders at issue rise to the level of an award.

¶4 These facts give a context to the certified question, and establish that the answer to the question may be determinative of an issue in pending litigation in the certifying court. 20 O.S.2001, § 1602. There is no controlling decision of this Court that answers this certified question.

Roger B. Hale, Wyatt, Austin, Kingery & Hale, Ada, OK, for plaintiff.

William D. Perrine, Perrine, McGivern, Redemann, Reid, Berry & Taylor, P.L.L.C., Tulsa, OK, for defendants.

WINCHESTER, J.

¶1 The United States District Court for the Northern District of Oklahoma certified the following question pursuant to the Uni-

## II. EXCLUSIVITY OF WORKERS' COMPENSATION ACT

¶5 The Workers' Compensation Act "provides a complete, comprehensive, and ex-

clusive method for administration of its provisions and for the enforcement of any and all awards made thereunder." *May v. Covington*, 1939 OK 429, ¶ 0, 95 P.2d 233. In the *May* case, the claimant's award was not paid. A general execution issued and was returned unsatisfied. The claimant then tried to collect against the stockholders of his employer, based on a statute in title 18, now repealed. The Court held that the Workers' Compensation Act, at that time the "Workmen's Compensation Law," was not complementary to any prior existing legislation, but an independent and separate legislative expression that established rights and liabilities and created methods for their determination and for the enforcement of any awards. *May,* 1939 OK 429, ¶ 6, 95 P.2d at 234. The Workers' Compensation Act is exclusive as to both awards and remedies. That Act provides in pertinent part:

> "The liability prescribed in Section 11 of this title shall be exclusive and in place of all other liability of the employer . . . at common law or otherwise, for such injury, loss of services, or death, to the employee, or the spouse, personal representative, parents, or dependents of the employee, or any other person."

85 O.S.2001, § 12.

■ ¶ 6 The plaintiff, Keir DeAnda, maintains that this provision relates only to the liability of the employer, not to that of the insurance carrier. This question was answered in *United States Fidelity and Guaranty Co. v. Theus,* 1972 OK 9, ¶¶ 7, 12, 493 P.2d 433, 434, 435. In that case the Court observed that although the Workers Compensation Act does not specifically exclude the insurance carrier from suit in district court for its own negligence, nevertheless, "the carrier is immune from suit in a common law action." After examining provisions in the Workers' Compensation Act, the Court held that the intent of the law was "to make the insurance carrier one and the same as the employer as to liability and immunity." *Theus,* 1972 OK 9, ¶ 12, 493 P.2d at 435, *Fehring v. State Ins. Fund,* 2001 OK 11, ¶ 28, 19 P.3d 276, 285.

¶ 7 In *Kuykendall* we held that a common law remedy was not available against an employer for a post-judgment failure to pay an award ordered by the Workers' Compensation Court. *Kuykendall,* 2002 OK 96, ¶ 13, 66 P.3d at 378. DeAnda attempts to distinguish *Kuykendall* from the facts before us because one involves a self-insured employer and the other an insurance carrier for an employer. But the teaching of *Theus* is that they are treated the same; if a self-insured employer cannot be sued for a bad faith failure to pay, neither can an employer's insurance carrier.

### III. INTENTIONAL INJURY

¶ 8 Title 85 O.S.2001, § 11 provides compensation for "accidental personal injury." DeAnda argues that intentional acts of the insurance carrier are not covered by the Workers' Compensation Act. He continues that because bad faith is an intentional act, recovery for damages does not fall within the exclusive jurisdiction of the Workers' Compensation Court.

¶ 9 In *Whitson v. Oklahoma Farmers Union Mut. Ins. Co.,* 1995 OK 4, 889 P.2d 285, the issue was whether a successful workers' compensation claimant could later assert a tort claim against his employer for the manner in which the employer defended the claim. The Court held that he could not. *Whitson,* 1995 OK 4, ¶ 1, 889 P.2d at 286. The facts reveal that Whitson's supervisor claimed that he never received notice of Whitson's injury within the statutory time. The supervisor allegedly instructed other employees to deny notice of the claim. However, despite the supervisor's actions, an employee did confirm Whitson's accident to the investigator for the workers' compensation carrier early in his investigation. The court awarded compensation. *Whitson,* 1995 OK 4, ¶ 2, 889 P.2d at 286.

¶ 10 Whitson sued for fraud and bad faith. The trial court granted summary judgment to the defendants. On appeal, this Court held that an employer's liability to an injured worker is limited to that created by § 12 of the Workers' Compensation Act. *Whitson,* 1995 OK 4, ¶ 8, 889 P.2d at 287.[1] The act of

---

1. Paragraph 8 of *Whitson* contains dicta regard-    ing whether an insurer owes a duty of good faith

the supervisor was alleged to be intentional, yet because it occurred during the adjudication of an employee's claim, the Court found the intentional act could not be grounds for a separate lawsuit.

¶ 11 Without citing *Theus, Anderson v. United States Fidelity and Guaranty Co.,* 1997 OK 124, 948 P.2d 1216, nevertheless followed its teaching in placing the insurer in the same position as the employer for conduct that predates a workers' compensation award. *Anderson* held that Oklahoma does not recognize a bad faith claim for pre-award conduct against a workers' compensation insurance carrier. *Anderson,* 1997 OK 124, ¶ 11, 948 P.2d at 1218, citing "*Whitson* 889 P.2d at 285." The insurance carrier in that case contested Anderson's workers' compensation claim and filed an objection to his medical report. About six months later, the insurer authorized medical treatment. *Anderson,* 1997 OK 124, ¶ 3, 948 P.2d at 1216–1217.

¶ 12 Anderson filed suit in the district court of the State of Oklahoma for bad faith and intentional infliction of emotional distress. The case was removed to the United States District Court for the Northern District of Oklahoma, which certified this question:

"Does Oklahoma law recognize the tort of bad faith for unjustified denial of workers' compensation insurance coverage or the assertion of a groundless defense, based on alleged damages incurred for the carrier's conduct that predated the claimant's workers' compensation award?"

*Anderson,* 1997 OK 124, ¶ 1, 948 P.2d at 1216. Like *Whitson, Anderson* alleged an intentional act, yet this Court refused to recognize the pre-award tort.

■ ¶ 13 *Whitson* and *Anderson* conclusively establish that not all intentional torts fall outside the jurisdiction of the Workers' Compensation Court. Therefore, even if the actions of the defendants, AIU and AIG, were intentional, that fact does not necessarily exclude them from the exclusive jurisdiction of the Workers' Compensation Act.

## IV. REMEDY FOR FAILURE TO PAY

■ ¶ 14 A remedy for failure to pay is found in 85 O.S.2001, § 42.[2] The Legislature has included a remedy within the Workers' Compensation Act for post-judgment acts,

and fair dealing in a workers' compensation case. *Whitson,* 1995 OK 4, ¶ 8, 889 P.2d at 287. This was discussed in *Kuykendall* and its conclusion disputed. *Kuykendall v. Gulfstream Aerospace Technologies,* 2002 OK 96, ¶ 8, 66 P.3d 374, 376–377.

2. 85 O.S.2001, § 42 provides:

"A. If payment of compensation or an installment payment of compensation due under the terms of an award, except in the case of an appeal of an award or an award from the Multiple Injury Trust Fund, is not made within ten (10) days after the same is due by the employer or insurance carrier liable therefor, the Court may order a certified copy of the award to be filed in the office of the court clerk of any county, which award whether accumulative or lump sum shall have the same force and be subject to the same law as judgments of the district court. Any compensation awarded and all payments thereof directed to be made by order of the Court, except in the case of an appeal of an award or an award of compensation from the Multiple Injury Trust Fund, shall bear interest at the rate of eighteen percent (18%) per year from the date ordered paid by the Court until the date of satisfaction. On or after November 1, 2001, compensation ordered to be paid from the Multiple Injury Trust Fund shall bear simple interest only at the percentage rate of applicable to judgments in civil cases pursuant to Section 727 of Title 12 of the Oklahoma Statutes from the date of the award. Any award from the Multiple Injury Trust Fund prior to November 4, 1994, shall bear interest at the percentage rate applicable to judgments in civil cases pursuant to Section 727 of Title 12 of the Oklahoma Statutes. Upon the filing of the certified copy of the Court's award a writ of execution shall issue and process shall be executed and the cost thereof taxed, as in the case of writs of execution, on judgments of courts of record, as provided by Title 12 of the Oklahoma Statutes; provided, however, the provisions of this section relating to execution and process for the enforcement of awards shall be and are cumulative to other provisions now existing or which may hereafter be adopted relating to liens or enforcement of awards or claims for compensation.

"B. If any insurance carrier intentionally, knowingly, or willfully violates any of the provisions of the Workers' Compensation Act or any published rules or regulations promulgated thereunder, the Insurance Commissioner, on the request of a judge of the Court or the Administrator, shall suspend or revoke the license or authority of such insurance carrier to do a compensation business in this state."

such as when a failure to pay occurs after an award has been ordered. Title 85 O.S.2001, § 42, provides that the certified copy of the Workers' Compensation award shall have the same force and be subject to the same law as judgments of the district court. Accordingly, whatever law applies to the district courts for collection of judgments also applies to the collection of awards originating from the Workers' Compensation courts. When a copy of the certification order is filed in the offices of any court clerk and county clerk, and is entered on the judgment docket, the certified unpaid award acquires by force of statute the efficacy of a district court judgment, "transforming an unpaid award in default into an enforceable district court adjudication by clothing the obligor's compensation liability with the attributes of a district court judgment." *Lee Way Motor Freight, Inc. v. Welch*, 1988 OK 121 ¶ 9, 764 P.2d 191, 195. "When filed in the district court, the certification affords a legal vehicle for enforcement proceedings to be conducted in that forum." *Lee Way Motor Freight*, 1988 OK 121 ¶ 10, 764 P.2d at 195.

¶ 15 That award bears interest at the rate of eighteen percent per year from the date it was ordered paid by the Workers' Compensation Court until the date of satisfaction. Upon the filing of a certified copy of the award, a writ of execution issues, process is executed and costs taxed, as in the case of writs of execution on judgments of courts of record. All remedies available to judgment creditors are available to the injured employee. *Bishop v. Wilson Quality Homes*, 1999 OK 60, ¶ 6, 986 P.2d 512, 514.

¶ 16 In the Plaintiff's Response Brief, DeAnda complains that the remedy is inadequate to compensate an employee when an insurer fails to pay the ordered award, or fails to pay timely. DeAnda asserts that the insurance industry routinely ignores orders of the Workers' Compensation Court, knowing that nothing will happen as a result of their non-compliance. To support this generalization DeAnda cites *Goodwin v. Old Republic Ins. Co.*, 1992 OK 34, 828 P.2d 431. If

*Goodwin* is the evidence of general noncompliance with the remedy provided in the statutes, it must fail.

¶ 17 *Goodwin* assumed, for the purpose of deciding the issue before the Court, that a workers' compensation insurance company could be liable in tort for a bad faith refusal to pay an employee's workers' compensation award. *Goodwin*, 1992 OK 34, ¶ 1, 828 P.2d at 431–432. The Court held that the facts in the case did not support an action for bad faith. *Goodwin*, 1992 OK 34, ¶ 1, 828 P.2d at 431–432. There is no support in the record for the allegation that workers' compensation insurance companies routinely ignore court ordered relief.

¶ 18 The purpose of the Act is to fully define the rights of the parties and to wholly compensate an injured worker. The Legislature intended to lessen the adversarial nature of the process. Injecting the tort of bad faith into this legislative scheme would threaten the balance created by the Legislature. The Act provides a balance so employees may be compensated for work-related injuries and employers may stay in business and continue to pay those benefits.

¶ 19 The Legislature makes policy decisions in setting the remedies available to an employee in the Workers' Compensation Act. It fixes certain factors in the calculation of awards to achieve exact and uniform results. *Mudge Oil Co. v. Wagnon*, 1943 OK 354, ¶ 8, 145 P.2d 185, 186. The defendants correctly observe that DeAnda is not so much concerned with the absence of remedies as with the adequacy of the remedies. The adequacy of the remedies found in the Workers' Compensation Act remains with the Legislature. To rule otherwise would be an improper invasion of the constitutionally-mandated balance of power. Okla. Const., art. 5, § 1.[3] Adding a common law tort as a remedy is as much an invasion of the remedies provided by the Legislature as an attempt to alter the schedule of compensation found at 85 O.S. 2001, § 22. We would be substituting our

---

**3.** Article 5, § 1 provides: "The Legislative authority of the State shall be vested in a Legislature, consisting of a Senate and a House of Representatives; but the people reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature."

policies for their policies. That is not within the Court's jurisdiction.

¶ 20 The statute sets out a post-judgment remedy for a post-judgment act. Section 42 explicitly includes the insurance carrier. Accordingly, we conclude that the Legislature intended for an insurance carrier's post-judgment failure to pay fall within the exclusivity of the Workers' Compensation Act.

## V. GENERAL OBSERVATIONS

¶ 21 The Workers' Compensation Act[4] provides a substitute remedy to an employee for accidental injuries received during covered employment. The Act removes the burden of proving negligence. In exchange, the employer receives protection from any other liability to the employee. This protection extends to all liability, whether direct or indirect, that results from the employee's injuries. *Harter Concrete Products v. Harris,* 1979 OK 38, ¶ 7, 592 P.2d 526, 528. The Act is a mutual compromise. *Weber v. Armco,* 1983 OK 53, ¶ 4, 663 P.2d 1221, 1224. It encompasses all injuries arising from the employment relationship.

¶ 22 In a workers' compensation case where an insurer or a self-insurer fails to pay, the court ordering the payment must enforce its ruling. Both the Workers' Compensation Court and the District Court have provisions and the power to protect their judicial pronouncements. Injecting a new tort into the process is improper.

¶ 23 Other jurisdictions are divided over the issue of whether the workers' compensation insurer may invoke the employer's immunity from suits as a defense against a bad faith lawsuit. A slight majority favors immunity from suit.[5] An exhaustive listing and analysis of the holdings of the high courts of sister states would not be complete without an analysis of their individual workers' compensation laws. We consider this unnecessary because our holding today is merely an extension of our holdings in prior cases.

¶ 24 In *Kuykendall* we observed there are no Oklahoma cases holding an employer liable for bad faith breach in paying a Workers' Compensation award. *Kuykendall,* 2002 OK 96, ¶ 8, 66 P.3d at 376–377. · We then discuss the difference between a "holding" and "*obiter dictum* " as well as the cases of *Goodwin, Whitson, Anderson,*[6] and *Fehring.* Though these cases arguably predict a cause of action for bad faith against a workers' compensation carrier for post-award conduct, such predictions were *dicta.* As *dicta,* this language fails to constitute a judicial decision or holding. Accordingly, it would be inappropriate and improper for us to overrule such *dicta.*[7] The expressions of opinion in the above-referenced cases do not reflect a correct statement of the law in Oklahoma. Oklahoma does not recognize the tort of bad faith against a workers' compensation insurance carrier for post-award conduct.

CERTIFIED QUESTION ANSWERED.

CONCUR: OPALA, V.C.J., LAVENDER, HARGRAVE, BOUDREAU, WINCHESTER, JJ.

DISSENTS: WATT (Joins KAUGER, J.), C.J., HODGES (Joins KAUGER, J.), KAUGER, EDMONDSON (Joins KAUGER, J.) JJ.

OPALA, V.C.J., concurring.

¶ 1 The court announces today—in answer to a question posed by a federal court—that Oklahoma does not recognize a bad-faith tort remedy for post-award harm inflicted by a

---

4. The original act was enacted by Laws 1915, ch. 246, art. 1, § 1.

5. Ashley, Stephen S., Bad Faith Actions Liability & Damages § 7:12, nn. 88, 89 (Westlaw 2004). *Kuykendall* is listed among that majority favoring immunity from suit. See also, Annotation, *Tort Liability of Worker's Compensation Insurer for Wrongful Delay or Refusal to Make Payments,* 8 A.L.R.4th 902, § 2 (Westlaw 2004).

6. *Anderson v. United States Fidelity and Guaranty Co.,* 1997 OK 124, 948 P.2d 1216

7. "A judicial decision is said to be overruled when a later decision, rendered by the same court or by a superior court in the same system, expresses a judgment upon the same question of law directly opposite to that which was before given, thereby depriving the earlier opinion of all authority as a precedent." *Black's Law Dictionary* 995, (5th ed.1979). "2. (Of a court) to overturn or set aside (a precedent) by expressly deciding that it should no longer be controlling law <in *Brown v. Board of Education,* the Supreme Court overruled *Plessy v. Ferguson*>." *Black's Law Dictionary* (Westlaw, 7th ed.1999).

workers' compensation carrier. While I concur in the court's pronouncement, I write separately to explain the analytical framework for joining today's opinion.

## I

### THE ANATOMY OF LITIGATION

¶ 2 In 1999 the plaintiff filed four workers' compensation claims against Terra Telecom [1] alleging separate accidental on-the-job injuries. In December of that year the Workers' Compensation Court found that the plaintiff had sustained an accidental on-the-job injury.[2] The essence of the plaintiff's federal-court claim is that the defendant failed to satisfy its statutorily imposed compensation obligation [3] **after** the Workers' Compensation Court had determined the amount of the award. More specifically, the plaintiff avers that the **defendant (1) unreasonably delayed its authorization of necessary medical expenses and (2) failed to remit court-ordered travel expenses in a timely fashion.**

## II

### THE SO–CALLED BAD–FAITH DELICT FOR *BAD–FAITH* REFUSAL TO SETTLE A COVERED CLAIM IS A NONGLOBAL STATUS–BASED TORT[4]

¶ 3 The so-called bad-faith tort is extremely narrow. Insurers who bear an obligation of good faith and fair dealing stand exposed to bad-faith tort liability **only when** they refused in bad faith to settle with an insured a policy-covered loss and the indemnitee suffered resulting harm.[5]

## III

### ALLOWING PLAINTIFFS TO SUE WORKERS' COMPENSATION CARRIERS IN TORT FOR POST–AWARD ACTS OF BAD FAITH WOULD DISRUPT THE DELICATE BALANCE OF CREATED EMPLOYER AND EMPLOYEE INTERESTS NOW EMBODIED IN THE TERMS OF O.S. 2001 §§ 11, 12 and 122.

¶ 4 The provisions of 85 O.S.2001 §§ 11, 12 and 122 were the product of a tradeoff between workers' and employers' interests: workers obtained the benefit of employer's fault-free liability for on-the-job-injuries, and employers received protection from being answerable in tort.[6] **Employers' insurers,**

---

1. AIU insures Terra Telecom, and AIG serves as AIU's third-party administrator.

2. Two conditions must be met for an employee to recover workers' compensation for an **accidental injury.** The injury must be sustained in the course of and arise out of the employment. *See Kuykendall v. Gulfstream Aerospace Technologies,* 2002 OK 96 ¶ 6, 66 P.3d 374, 376.

   Of the four compensation claims the plaintiff filed, one has been dismissed, two are pending, and the fourth prompted the question to be answered here.

3. The provisions of 85 O.S.2001 §§ 11, 12, and 122 require that employers compensate employees for accidental on-the-job injuries.

4. The so-called bad-faith tort does not avail to persons outside the insurer/insured relationship. *See Rodgers v. Tecumseh Bank,* 1988 OK 36 ¶ 16–18, 756 P.2d 1223, 1226–27.

5. *See Christian v. American Home Assur. Co.,* 1977 OK 141 ¶ 24, 577 P.2d 899, 904.

   The tort of bad faith arises only when the plaintiff and his insurer are in privity of contract and the latter has breached the implied-in-law promise of good faith and fair dealing. *See Id.*

Though the plaintiff in this case is not *stricto sensu* in contractual privity with the defendant, he occupies vis-a-vis his employer's workers' compensation carrier the status of a third-party beneficiary. By Oklahoma's statutory law he is accorded the benefit of contractual privity. *See Id.* It is clear that if the plaintiff's claim were actionable dehors the workers' compensation law, he would have standing to sue. *See Id.; see* 85 O.S.2001 § 65.3; *see State Ins. Fund v. Brooks,* 1988 OK 50 ¶ 6, note 9, 755 P.2d 653, 657.

6. The provisions of 85 O.S.2001 §§ 11, 12 and 122 are patterned after an act passed in England at the turn of the 20th century. The act's text was similar, if not identical to, a law enacted in Prussia during the 1880's, the last decade of Otto von Bismarck's chancellory. *See* Arthur Larsen, *Larsen's Workers' Compensation Law* § 80.05[3], (Matthew Bender, 2003). Bismarck recognized a need to provide financial protection for workers who during the period of Prussia's industrialization left their farms to settle in cities and work in factories with a high incidence of injury. He realized that tort claims could expose fledgling industries to virtually limitless and potentially destructive liability. The original workers' compensation legislation reflected a desire to provide

who have undertaken to stand as their compensation indemnitors,[7] share the totality of immunity the employers gained in this *quid pro quo*.[8]

¶ 5 The very reason an employer's and an insurer's status-based and contract-based immunity from tort liability are coterminous stems, in part, from the equity's principle of subrogation. Insurers, who are bound by an agreement that calls for the indemnification of the insured,[9] agree to stand in the insured's shoes and assume the sum total of the latter's compensation responsibility.[10] To hold that a workers' compensation insurer's immunity from tort liability is not coterminous with that of an insured employer's own immunity would indeed abrogate the latter's protection by removing the bargain's very pedestal and toppling the essence of the tradeoff.[11]

## IV

## AN EMPLOYER IS IMMUNE FROM TORT LIABILITY FOR DELAYED OR UNFULFILLED PERFORMANCE OF STATUTORILY IMPOSED (OR IMPOSABLE) COMPENSATION-RELATED DUTIES BECAUSE THEY ARISE OUT OF THE LEGAL OBLIGATION FOR WHICH THE TERMS OF 85 O.S.2001 §§ 11, 12 and 122 CONFER IMMUNITY FOR ALL LIABILITY DEHORS THE COMPENSATION LAW

¶ 6 Liability for post-award deficiency in performance or for one's nonperformance falls within the penumbra of immunity that employers received in a tradeoff for accepting fault-free liability to claimants covered by the Workers' Compensation Act.[12] As a result of the tradeoff, the obligations that the workers' compensation regime imposes on employers are absolutely inseparable from the immunity that compensation law confers. That immunity is co-extensive with liability for mis- mal- or nonperformance of statutorily prescribed obligations.

¶ 7 An employer's duty to satisfy—by required performance—an award for an accidental on-the-job injury arises out of the bundle of multiple obligations imposed by the workers' compensation law.[13] The Workers'

---

expedient compensation for workers whose dependence on hourly wages meant that they did not have time to litigate claims. The provisions of the act also relieved workers of the difficult burden of proving that their injury was the result of the employer's fault. Moreover, the act trimmed the overbroad sweep of employer's fault-free accountability by conferring upon them general immunity from *ex delicto* liability. *See Id.* at SC–2.

7. *See* 85 O.S.2001 § 61.

8. *See U.S. Fidelity & Guaranty Co. v. Theus,* 1972 OK 9 ¶ 12, 493 P.2d 433, 435; *see, e.g., Fehring v. State Ins. Fund,* Okla.2001 ¶ 28, 19 P.3d 276, 285; *Brooks,* 1988 OK at ¶ 9, 755 at 658,.

9. *See Id.*

10. *See Id.*

11. Exposing workers' compensation carriers to delictual liability for bad faith would force insurers to hire lawyers to defend against a new class of litigation. Carriers would also have to assume the risk of losing cases and satisfying potentially large verdicts. This uncontemplated liability would be passed on to employers in the form of increased insurance premiums. The added costs to employers would in turn disrupt the equilibrium of costs and benefits that the Workers Compensation Act promised to maintain.

12. Twenty-four states have statutes clearly identifying workers' compensation carriers as sharing the entirety of their insured employer's immunity. *See* Larsen *supra* note 6, at § 114.02, (Matthew Bender, 2003). These statutes explicitly bar employees from bringing bad-faith tort claims against insurers. *See Id.* Of the remaining twenty-six states, no clear majority holds that an insurer's immunity extends to bad-faith failure to compensate an insured's loss. *See Id.* Oklahoma's jurisprudence teaches that workers' compensation carriers share the same immunity as their insured employers. *See U.S. Fidelity,* 1972 OK at ¶ 12, 493 at 435.

13. *See* 85 O.S.2001 § 11.

Compensation Court's determination of the obligation's quantum does not create a new duty that may stand independently of that which the provisions of §§ 11, 12 and 122 impose at the moment an on-the-job injury is sustained. Since the legal duty to fulfill statutory obligations remains exactly the same **before** and **after** a compensation award is imposed, the very same immunities protect the employer **before** as those which do so **after** adjudication stands effected. **The employer (and its insurer) stands immune from tort liability for pre- as well as for post-award imposed (or imposable) compensation-law obligations.** To hold otherwise would greatly undermine the *quid pro quo* upon which workers' compensation rests and would erode, if not indeed destroy, the value of the hard-won immunity.[14]

14. *See supra* note 6.

15. This immunity does not apply to **uninsured employers** who have failed to secure a permit as self-insurers. *See* 85 O.S.2001 § 12; *Pryse Monument Co. v. District Court of Kay County*, 1979 OK 71 ¶2, 595 P.2d 435, 436; *see, e.g., Ice v. Gardner*, 1938 OK 502 ¶2, 83 P.2d 378, 382; *Eagle Creek Oil Co. v. Gregston*, 1924 OK 539 ¶2, 226 P. 339, 340. Where an uninsured employer did not obtain a self-risk employment permit, an accidentally injured employee could **either** sue in tort **or** pursue a workers' compensation remedy; these two vindication methods are separate and mutually exclusive. *See Pryse*, 1979 OK at ¶2, 595 at 437.

16. A majority of states hold that the immunity from *ex delicto* liability employers received in the *quid pro quo* extends to bad-faith actions arising out of statutorily imposed obligations to compensate. *See supra* note 12. While reaching the same results, courts have developed similar yet distinct jurisprudential rationales. At least thirteen states and the District of Columbia bar bad-faith tort claims against employers and workers' compensation carriers for mis- mal- or nonperformance of statutorily imposed (or imposable) obligations on the grounds that compensation law provides the sole remedy for claims arising out of accidental on-the-job injuries. *See, e.g., Atkinson v. Gates, McDonald & Co.*, 838 F.2d 808, (C.A.5 Miss., 1988); *Bradford v. Noble Drilling Co.*, 503 F.Supp. 624, (E.D.La., 1980); *Connolly v. Maryland Casualty Co.*, 849 F.2d 525, (C.A.11 Fla., 1988); *Hall v. C & P Tel. Co.*, 809 F.2d 924, (D.C.Cir.1987); *Brown v. Transportation Ins. Co.*, 448 So.2d 348, (Ala., 1984); *Low-*

## V

## ALLOWING TORT LIABILITY FOR AN INSURER'S MAL- MIS- OR NONPERFORMANCE OF WORKERS' COMPENSATION DUTIES WOULD CREATE A NEW REMEDY FOR A DELICT THAT LIES WELL UNDER THE EXCLUSIVITY STATUTE'S UMBRELLA OF IMMUNITY[15]

¶ 8 The tort of bad faith for mis- mal- or nonperformance of an obligation imposed (or imposable) by workers' compensation law is barred by the exclusivity-conferred immunity.[16] In its impact on the employer, "exclusivity" confers immunity from employee-sustained accidental on-the-job harm sought to be pressed by a claim **dehors** the Workers' Compensation Act. Exclusivity means that the common-law remedies cannot be used

*man v. Piedmont Exec. Shirt Mfg. Co.*, 547 So.2d 90, (Ala., 1989); *Stafford v. Westchester Fire Ins. Co.*, 526 P.2d 37, (Alaska, 1974); *Cooper v. Argonaut Ins. Cos.*, 556 P.2d 525, (Alaska, 1976); *Ricard v. Pacific Idemnity Co.*, 132 Cal.App.3d 886, 183 Cal.Rptr. 502, (1st Dist, 1982); *Garrett v. Washington Air Compressor Co.*, 466 A.2d 462, (Dist.Col.App., 1983); *Valladares v. Avis Rent–A–Car Systems, Inc.*, 449 So.2d 902, (Fla.App.D3., 1984); *Hymel v. Cigna Property & Casualty Cos.*, 563 So.2d 488, (La.App., 1990); *Broaddus v. Ferndale Fastener Div.*, 84 Mich.App. 593, 269 N.W.2d 689, (1978); *State ex rel. American Motorists Ins. Co. v. Ryan*, 755 S.W.2d 399, (Mo. App., 1988); *Hayes v. Aetna Fire Underwriters*, 187 Mont. 148, 609 P.2d 257, (1980); *Escobedo v. American Employers Ins. Co.*, 547 F.2d 544, (C.A.10 N.M.1977)(applying New Mexico law); *Penn v. Standard Acci. Ins. Co.*, 4 A.D.2d 796, 164 N.Y.S.2d 618, (3d Dept., 1957); *Kuney v. PMA Ins. Co.*, 525 Pa. 171, 578 A.2d 1285, (Pa, 1990); *Fry v. Atlantic States Ins. Co.*, 700 A.2d 974 (Pa.Super.Ct., 1997); *Whitten v. American Mut. Liability Ins. Co.*, 594 F.2d 860, (DC SC, 1977)(applying South Carolina law); *William v. Newport News*, 240 Va. 425, 397 S.E.2d 813, (1990); *see also supra* note 12 (discussing the penumbra of employer immunity as it extends to insurers). Other states emphasize judicial deference to legislative intent. These courts hold that legislatures manifested their intent by crafting remedies for late payments. *See also supra* note 12.; *see* 8 A.L.R.4th 902 § 5[a]. As this concurrence indicates, I find the former rationale—that based on the outer reach of immunity—much more persuasive.

either to **strengthen or weaken, expand or abridge** the sole statutory remedy available for vindication of on-the-job injury claims covered by the Act. An action in tort for an employer's mal- mis- or nonperformance of obligations imposed (or imposable) by the Act—whether based in negligence or on a tort wilful in character—lies well within the umbrella of immunity conferred by the exclusivity doctrine.

¶ 9 Attempting to superimpose bad-faith tort liability for malperformed or unfulfilled statutory compensation duties would dilute, if not indeed destroy, the regime of remedies that compensation law has fashioned to protect employer immunities. Because due satisfaction of an award for an accidental on-the-job injury is in itself an obligation immunized by compensation law, the only remedies available for delayed or unperformed satisfaction are those which are enacted by the provisions of 85 O.S.2001 §§ 42 and 43.[17]

**17.** The provisions of 85 O.S.2001 § 42 state that late payments "shall bear an interest of 18% per year." The statute also enables judges in the Workers' Compensation Court to suspend or revoke the license of a carrier who fails to comply with an award for compensation.

**18.** *See Pursell v. Pizza Inn Inc.*, 1990 OK CIV APP 4 ¶ 3, 786 P.2d 716, 717; *Roberts v. Barclay*, 1962 OK 38 ¶ 4, 369 P.2d 808, 809.

Any job poses risks of certain types of foreseeable injury. These injuries and the risks that stem from them are considered to be employment-related; they are contemplated by the employer and the employee and are reflected in the wage paid to the latter as well as the amount of the former's workers' compensation insurance premiums. Regardless of fault, the provisions of 85 O.S. §§ 11, 12 and 122 regard these injuries as accidental and covered by compensation law. Because the workers' compensation *quid pro quo* eliminated fault findings for on-the-job injuries, the fact that the harm was the product of an employer's reckless indifference is irrelevant as long as the resulting harm was from an employment-related risk. *Harrington v. Certified Systems Inc.*, 2000 Okla.Civ.App. Div. 4 ¶ 34, 45 P.3d 430, 436.

In order to give rise to a tort claim that is dehors compensation law, an intentional on-the-job tort must be the product of the employer's knowing and wilful intent to cause injury. *Id.* at ¶ 32–34, 435–36. The injury must also be one that is **not** within the normal employee/employer relationship, and not a risk directly related to the employee's service. *Id.* at ¶ 34, at 436. In other words, intentional on-the-job torts are those which are not employment-related. Sexual harassment, intentional infliction of emotional

## VI

## EMPLOYER'S IMMUNITY FROM LIABILITY DOES NOT EXTEND TO INTENTIONAL TORTS INFLICTED ON THE JOB

¶ 10 An employer's immunity from tort liability does not extend to **intentional** (as distinguished from accidental) on-the-job torts.[18] As the plain language of 85 O.S.2001 § 11 makes clear, all **accidental** on-the-job injuries must be channeled through the Workers' Compensation Court,[19] but claims for intentional on-the-job delicts may be vindicated outside of the workers' compensation regime.[20] A non-accidental injury, if intentionally inflicted by the employer upon an employee **at work or otherwise in the course of employment,** is not remediable by the Workers' Compensation Act and hence is subject to vindication in common-law tort.

¶ 11 Though the delict of bad faith is an intentional common-law tort,[21] its nature is

distress, and assault and battery, for example, are types of injury that would not occur at the workplace without the willful, deliberate, affirmative delict of an employer whose behavior created personal—rather than employment-related risks. *Cf. Id.* at ¶ 28–33, at 436.

**19.** The relevant portion of the statute states: "Every employer subject to the provisions of the Workers' Compensation Act shall pay, or provide as required by the Workers' Compensation Act . . . for the disability of death of his employee arising out of and in the course of his employment . . ." 85 O.S.2001 § 11. If the cause of action were to arise out of an intentional on-the-job tort, the employee would be able to litigate the claim outside of the workers' compensation system. *See Id.*

**20.** *See supra* note 18.

**21.** *See Manis v. Hartford Fire Ins. Co.*, 1984 OK 25 ¶ 6, 681 P.2d 760, 761; *McCorkle v. Great Atlantic Ins. Co.*, 1981 OK 128 ¶ 9, 637 P.2d 583, 585; *see, e.g., Christian*, 1977 OK at ¶ 24, 577 at 904.

Compensation law imposes duties that the provisions of 85 O.S.2001 §§ 11, 12 and 122 incorporate into the normal employee/employer relationship. Hence, a breach of those statutory obligations does not occur outside of the scope of the employer/employee relationship and hence fails to satisfy an essential element of intentional torts. *See supra* note 3; *supra* note 18.

Moreover, in order to have an actionable intentional tort that lies outside of the compensation law, the employee must demonstrate an act or

irrelevant in this case because it occurred neither at work nor in the course of employment. **Rather, the injury sought to be remedied is connected solely with the alleged tortfeasor's compensation liability.** Since the plaintiff's claim for malperformed or unperformed obligations stands inextricably linked to employer's liability for claimant's on-the-job injury, the terms of 85 O.S. 2001 §§ 11, 12 and 122 bar a tort or any other claim dehors the workers' compensation regime of remedies.

## VII

## SUMMARY

¶ 12 Oklahoma does **not recognize a global bad-faith tort for every breach of good faith and fair dealing which stands imposed by contract or law.** The so-called bad-faith tort action is confined to tortfeasor-insurers and inures solely to insured persons (and a policy's third-party beneficiaries). It lies only for bad-faith refusal to settle a covered claim.[22] In contrast, the duty to satisfy an award is an obligation imposed by workers' compensation law—a public-law responsibility. By the Workers' Compensation Act's provisions employers received **immunity from tort liability for all legal accountability arising out of compensation law's obligations;** this is part and parcel of the workers' compensation early tradeoff. An employer's (and therefore its insurer's) immunity from tort liability must hence be measured as fully co-extensive with the compensation law's statutorily imposed (or imposable) obligations.

BOUDREAU, J., concurring:

¶ 1 I write separately to explain my vote today in light of my dissenting vote in *Kuykendall v. Gulfstream Aerospace Technologies,* 2002 OK 96, 66 P.3d 374. *Kuykendall* addressed whether Oklahoma recognizes the tort of bad faith for *post-award conduct*

against a *self-insured employer.* We answered no. I dissented. In the instant case, we address whether to extend *Kuykendall* to employers' workers' compensation insurance carriers. Since *Kuykendall,* I have reconsidered and have come to the conclusion that *Kuykendall* is correct and that we should extend it to cover not only self-insured employers but also employers' workers' compensation carriers.

¶ 2 The Oklahoma Legislature designed our workers' compensation system as a fast, efficient way to compensate employees for accidental on the job injuries. The workers' compensation system is a comprehensive statutory scheme to fix compensation for, and provide medical care to, covered employees. *Caffey v. Soloray,* 2002 OK 82, 57 P.3d 870, 874. It is a *quid pro quo* between the employer/carrier and the employee. The employee gives up the right to sue in tort, gaining a certain remedy irrespective of fault. *Id.* In exchange, the employer avoids the high cost of litigation and possible excessive judgments. *Upton v. State ex. rel. Dept. of Corrections,* 2000 OK 46, 9 P.3d 84, 87.

¶ 3 To implement this bargain, the Legislature established the workers' compensation system as the exclusive remedy for employees who suffer accidental on the job injuries. Under the exclusive remedy doctrine, compensation benefits replace employers/carriers' tort liability for work-related accidental injuries.

¶ 4 In the past few years, this court has addressed the emerging attempt to penetrate the exclusive remedy doctrine with bad faith tort claims. In *Anderson v. USF & G,* 1997 OK 124, 948 P.2d 1216, we held that Oklahoma does not recognize the tort of bad faith against a carrier for *pre-award conduct.* In *Kuykendall,* we held that Oklahoma does not recognize the tort of bad faith against a *self-insured employer* for *post-award conduct*

---

omission unrelated to the performance of a statutorily imposed obligation. The so-called bad-faith tort is a product of the duty of good faith and fair dealing implied in law in all contracts between insurers and their insured (or third-party beneficiaries deemed in privity). *See supra* note 5. Since the workers' compensation carrier indemnifies the employer, duty of good faith and fair dealing is part and parcel of the latter's duty

to compensate. This obligation has been immunized by workers' compensation law. In short, claims of bad faith arising out of imposed (or imposable) compensation-law duties are not actionable outside of the Workers' Compensation Act.

22. *See Rodgers,* 1988 OK at ¶ 16–18, 756 at 1226–27.

1091

(delay or termination of payments or treatment). Today we face the same issue but against a carrier, not of a self-insured employer.

¶ 5 We resolve that issue today consistent with *Kuykendall*. We hold that once an employee's original accidental injury is determined to be within the scope of the Oklahoma Workers' Compensation Act, disputes that flow from the award of compensation for that injury likewise fall within the scope of the Act. This principle was clearly contemplated by the Legislature when it enacted the penalty provision for failure to timely pay awarded benefits, 85 O.S.2001 § 42 (18% interest).[1]

¶ 6 While the Legislature has provided this remedy for post-award delay or termination of payments or treatment by an employer, it is worth noting that the remedy is far from perfect. Because a claimant seeking to enforce a workers' compensation award under § 42 will probably need to engage the services of an attorney, it seems reasonable to me to add an attorney fee provision to § 42. While it is not and has never been the purpose of workers' compensation acts to make a covered employee whole,[2] allowing 18% interest without an attorney fee provision leaves the remedy ineffective for many claimants. However, such changes are solely within the realm of the Legislature, not the courts.

---

1. It is virtually impossible to delineate specific trends in how other states have dealt with the issue we address today, because the states have taken such varied positions. However, several states have held that where their workers' compensation act provides penalties for intentional delay in payment of compensation awarded, such statutory penalties preclude the employee's use of common law remedies. *See, e.g., Hormann v. New Hampshire Ins. Co.,* 236 Kan. 190, 689 P.2d 837 (1984).

2. *See Intentional Harassment by Delay or Termination of Payment or Treatment,* 6 Larson's § 104.05[3] at 104-34:

A majority of courts have taken the view that [the presence of a statutory penalty for the very conduct on which the tort suit is based] evidences a legislative intent that the remedy for delay in payments, even vexatious delay, shall

---

KAUGER, J., with whom WATT, C.J., HODGES and EDMONDSON, J.J. join, dissenting:

¶ 1 The majority's failure to honor without overruling jurisprudence clearly signaling to the Legislature and employees that injured workers may reasonably expect fair dealing and putting workers' compensation insurers on notice that acting in bad faith may subject the insurer to tort damages is disingenuous. One can only assume that the majority's "general observation" concerning the status of this Court's jurisprudence as *"obiter dictum"* is itself in the category of language failing to constitute "a judicial decision or holding". I dissent for the reasons expressed in *Kuykendall v. Gulfstream Aerospace Tech.,* 2002 OK 96, 66 P.3d 374, 379-89.

¶ 2 The concurree's suggestion on a reconsideration of attorney fees is nothing new nor is it an explanation for vacillation. Although the alteration in vote in today's cause is described as a "reconsideration" following *Kuykendall*, supra, it is at best a perilous shift which recognizes that the remedies for post-award misconduct or delay are "imperfect"[1]—but fails to acknowledge that, in practicality, they may be non-existent because of the price of instituting recovery. The best example of this occurs in the facts of *Kuykendall*, supra, which the dissenting opinion set forth:

"Under the facts presented, the majority has effectively left the employee with no remain with in the [workers compensation] system in the form of some kind of penalty.

Several courts, however, have rejected this reasoning, without very convincing rationales. A federal district court, for example, in *Carpentino v. Transport Ins. Co.,* 609 F.Supp. 556 (D.Conn.1985), *argued that penalties might not fully compensate the plaintiff. Since when, we may ask, has it been necessary for compensation acts to compensate claimants fully?* Other courts have correctly pointed out that, although the penalties may in some instances be inadequate, this does not, within the overall nature of the compensation concept, make them invalid. At most, it may be cause to apply to the legislature for a more suitable penalty level.

(emphasis added).

---

1. *DeAnda v. AIU Ins. & AIG Claim Servs., Inc.,* 2004 OK 54, ¶ 6, 98 P.3d 1080 (Boudreau, J. concurring.).

satisfaction. The employee did attempt to get the employer's self-insured status suspended or revoked. The record is unclear why the request was denied, but it is undisputed that it was. Also, with only $1,317.89 left unpaid, it is doubtful that the employee could even afford to hire an attorney to pursue enforcement of the judgment-to do so would most certainly cost more than the benefits and interest he might eventually be awarded. There is absolutely no reason to believe that the employer would be any more likely to respond to the district court's order than he is to those of the Workers' Compensation Court. Even with an enforceable judgment, the employee would most likely come away empty handed and with an attorneys' fee to pay." [2]

The remedies available to the employee are the same under the facts of this cause as those faced by the employee in *Kuykendall,* supra—nothing has changed.

¶ 3 The dissenting opinion in *Kuykendall,* supra, recognized that the Legislature had not acted to expressly eliminate the possibility of a post-award bad faith action in the workers' compensation setting despite the benefit of numerous rulings of this Court indicating that such a cause of action might well lie in post-award situations.[3]

¶ 4 The concurree's suggestion that recognition of a post-award bad faith cause of action would "disrupt the delicate balance of created employer and employee interests now embodied" in the Workers' Compensation Act is likewise unconvincing. It is no more appropriate today for us to engage in judicial legislation than it was when *Kuykendall,* supra, was under consideration. This Court has specifically recognized, that in the area of workers' compensation law, we may not interfere with the wisdom or the policy of

legislation.[4] In addition, we leave to the Legislature, the consideration of a statute's propriety, desirability, wisdom or practicability.[5] Finally, this Court lacks the power to act as a super-legislature by re-writing legislative enactments to conform with its views of public policy [6]—a power the majority and concurring opinion take on themselves—a function I would leave within the auspices of the Legislature.

---

**2.** *Kuykendall v. Gulfstream Aerospace Techs.,* 2002 OK 96, ¶ 36, 66 P.3d 374 (Kauger, J., with whom Watt, V.C.J., Hodges and Boudreau, JJ., joined, dissenting.).

**3.** *Kuykendall v. Gulfstream Aerospace Techs.,* see note 2 at ¶ 42, supra (Kauger, J., with whom Watt, V.C.J., Hodges and Boudreau, JJ., joined, dissenting.).

**4.** *Rivas v. Parkland Manor,* 2000 OK 68, ¶ 15, 12 P.3d 452 (Boudreau, J. for the majority.).

**5.** *In re Harris,* 2002 OK 35, ¶ 23, 49 P.3d 710 (Boudreau, J. for the majority.).

**6.** *Comer v. Preferred Risk Mut. Ins. Co.,* 1999 OK 86, ¶ 12, 991 P.2d 1006; *City of Hugo v. State ex rel. Public Employees Relations Bd.,* 1994 OK 134, ¶ 23, 886 P.2d 485; *Toxic Waste Impact Group, Inc. v. Leavitt,* 1988 OK 20, ¶ 10, 755 P.2d 626.